**UNITED STATES of America**

v.

**Marlon GARTH, Appellant**

No. 97–1042.

United States Court of Appeals, Third Circuit.

Argued: Feb. 8, 1999

Filed: Aug. 16, 1999

Michael G. Paul (Argued), Metuchen, NJ, for Appellant.

David L. Hall (Argued), Office of the United States Attorney, Philadelphia, PA, for Appellee.

Before: ROTH, McKEE, RENDELL, Circuit Judges.

## OPINION OF THE COURT

McKEE, Circuit Judge.

We are asked to decide whether Marlon Garth is procedurally barred from collaterally challenging his guilty plea to the charge of "using or carrying" a firearm "during and in relation to" a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1). The District Court held that Garth had waived his right to collaterally challenge the plea, and dismissed the petition without reaching the merits. This appeal followed.[1]

We hold that under Bousley v. United States, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), Garth must be afforded the opportunity to demonstrate whether he can satisfy the "actual innocence" exception to the bar of procedural default.

---

1. We review de novo the District Court's order. See Hollman v. Wilson, 158 F.3d 177, 179 (3d Cir.1998).

If he can meet that burden, the District Court must then examine whether Garth's plea was knowing and intelligent. Accordingly, we will reverse and remand for further proceedings consistent with this opinion.

## I.

At approximately 11:55 a.m. on August 20, 1991, James Corbett of the Narcotics Interdiction Unit of the Philadelphia Police Department, saw four males—Michael Gilbert, Chris Brown, Keith Wilson, and Marlon Garth—enter the 30th Street Train Station where Corbett was stationed. Gilbert entered carrying a red bag and a black bag. Corbett watched the four men as they proceeded to the information booth where Gilbert put both bags on the ground. Corbett continued watching as Brown picked up the red bag and walked to a telephone booth to place a call. Gilbert then picked up the black bag, and he, Wilson, and Garth followed Brown to the telephone booth. Corbett continued watching as Gilbert placed the black bag next to the red bag, and proceeded to the AMTRAK ticket window to purchase a ticket. While Gilbert was at the ticket window Wilson made a telephone call, and told the person on the other end of the line that he was going to Baltimore. The black bag remained on the ground between Wilson and Brown. Gilbert then returned from the ticket window, and Brown either told Gilbert to buy another round trip ticket or to exchange the tickets he had purchased. Brown then instructed Wilson to take the black bag to the bathroom. While Wilson was in the bathroom with the black bag, Brown placed a call. He told whoever answered that he (Brown) was leaving Philadelphia at 12:30 and would need to be picked up at 1:30. Following the call, Wilson returned from the bathroom with the black bag, and Gilbert and Garth returned from the ticket window.

At that point, Corbett and the other members of a DEA-AMTRAK drug interdiction task force who had been watching these activities approached the four men. The officers identified themselves, and began a conversation with the four males. When questioned, Gilbert admitted to owning the red bag, but all four men denied owning the black bag. Police searched the red bag pursuant to Gilbert's consent, but they did not find any contraband. They then started to search the black bag without objection from anyone. As Corbett began opening the black bag Brown unsuccessfully attempted to flee. Inside the black bag Corbett found approximately 40 grams of cocaine base (crack) and a loaded semiautomatic handgun. Brown, Wilson, and Gilbert were immediately arrested. Garth was arrested after Gilbert told the officers that Garth was involved in their plan to travel to West Virginia to distribute the cocaine.

Following his arrest, Garth cooperated with the government and appeared before a federal grand jury. He testified that he and his three confederates were transporting crack cocaine to sell in Ranson, West Virginia. He stated that Gilbert had told him that Wilson had a gun in his waistband as he had entered the train station with his three co-defendants. App. 8a–10a. Garth testified that this was the first he knew that anyone involved in the drug distribution scheme had a gun. Following his testimony, he was charged in a two count indictment. Count 1 charged that he "knowingly and intentionally possessed with intent to distribute, and aided and abetted the possession with intent to distribute, more than five grams of a mixture or substance containing a detectable amount of cocaine base . . ." in violation of 18 U.S.C. §§ 841(a)(1) & 2. Count 2 charged that "during and in relation to the commission of [the] drug trafficking crime [alleged in Count 1,] [Garth] did knowingly and unlawfully use and carry a firearm, and did aid and abet the knowing and unlawful use and carrying of a firearm . . ." in violation of 18 U.S.C. §§ 924(c) &

$2.^2$

Pursuant to his agreement with the government, Garth pled guilty to both counts. During the change of plea hearing, the government stated what it would have proved had the case gone to trial. The government proffered that "[Officer Corbett] would testify that they [all four defendants] were carrying and moving two bags, a red bag and a black bag." App. 26a. The only proffer that the government put forward in support of Count 2 was as follows: (1) "Officer Corbett would testify to Garth's admission[ ] . . . [that] he knew that the gun was present at Thirtieth Street"; (2) "Mr. Gilbert would testify that he told Garth about the presence of the firearm"; and (3) "[e]xperts would testify to the use of firearms for protection and drug trafficking and would also testify the weapon is an operable handgun."[3] App. 27a & 28a.

During the colloquy, the Judge informed Garth of the charges against him, the ramifications of choosing to plead guilty as opposed to proceeding to trial, and the possible sentencing range on the two counts. In doing so, the court explained the charges in Count 2 as follows: "The second count, the charge against you is the *use* of a firearm during this event. . . . That's a violation of U.S. Section 924(c), U.S.Code."[4] App. 32a (emphasis added). The Judge also explained:

2. In 1992, when Garth was convicted, § 924(c) provided in relevant part:

[A]ny person who, during and in relation to any crime of violence or drug trafficking crime . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . .
18 U.S.C.A. § 924(c)(1) (1992). In 1998, Congress amended § 924(c) to proscribe the act of "possessing a firearm" "in furtherance of" any crime of violence or drug trafficking crime, in addition to proscribing the offenses of "using" or "carry" a firearm during and in relation to such crimes. *See* 18 U.S.C.A. § 924(c)(1) (1999).

If you are found guilty by a jury or plead guilty to those charges, the sentence is, the maximum sentence would be 45 years in prison including a ten year minimum mandatory together with a minimum term of four years of supervised release but the supervised release could be for life. A fine of up to $250,-000 and $100 special assessment, that's what the sentence could be under the statute under these laws that I have just read to you. Possession of cocaine and *having a firearm* at the time. The statute says that's what the sentence will be for conviction of those offenses.

*Id.* (emphasis added). Garth pled guilty to both counts, and was later sentenced to eighteen months imprisonment on Count 1 (described in the Judgment as "Possession with intent to distribute Cocaine Base" and "Aiding and Abetting"), sixty months on Count 2 (described in the Judgment as "Use of a firearm during drug trafficking crime" and "Aiding and Abetting"), four years of supervised release upon completion of his incarceration, and a $100 special assessment.

Following the sentencing, the defendant filed a pro se Notice of Appeal, and appellate counsel was subsequently appointed. However, counsel's argument on direct appeal focused upon Garth's contention that a greater downward departure was warranted under Sentencing Guideline 5K1.1. Inasmuch as we lacked jurisdiction to re-

3. The government has never alleged that Garth ever carried the black bag or otherwise handled the gun while in the train station.

4. Significantly, a number of other documents in the record refer only to "using" or "possessing" the firearm, and not to "carrying" the firearm, including the government's December 30, 1991, Sentencing Memorandum, the government's December 30, 1991, Motion for Departure for Substantial Assistance, and the January 7, 1992, Judgment in a Criminal Case. The documents obviously are relevant for evaluating how counsel for the parties and the court itself understood the nature of the firearms charge at the time of the plea proceedings, and more importantly, the understanding that was communicated to Garth prior to and during the plea colloquy.

view the court's exercise of discretion, we dismissed the appeal.[5]

Nearly four years after Garth entered his plea, the Supreme Court decided *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), in which the Court held that the term "use" in 18 U.S.C. § 924(c) requires more than mere possession of, or proximity to, a firearm during the commission of the underlying offense. Rather, under *Bailey,* "use" requires "active employment" of the firearm, such as brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire the firearm. *Id.* at 143 & 148, 116 S.Ct. 501. In the wake of *Bailey,* numerous defendants have challenged the validity of their guilty pleas under § 924(c) contending that they, as well as their attorneys and the district courts, misunderstood the nature of the firearms charge and that the conduct they admitted to did not constitute a criminal offense.

Similarly, Garth filed a pro se habeas petition challenging his conviction for violating § 924(c).[6] Garth claimed that there was no factual basis to sustain his guilty plea. He argued that, under *Bailey,* he did not "use or carry" a firearm within the meaning of § 924(c), and asserted that he should not have been convicted of that offense. The government countered by arguing that, because *Bailey* did not reach the "carry" prong of § 924(c), Garth's conviction for "carrying" a firearm in violation of the statute should not be disturbed. The government also asserted that, inasmuch as Garth knew that Wilson was carrying the gun, Garth "constructively possessed" or "aided and abetted" the carrying of the gun.

The District Court did not reach the merits of Garth's claim because the court concluded that Garth was procedurally barred from collaterally challenging the validity of his guilty plea. The court held that it could review Garth's collateral challenge only if it could discern a constitutional violation (such as a due process violation or double jeopardy) from the face of the indictment, and Garth's indictment did not reflect any such facial defect. Moreover, the court reasoned that during his change of plea colloquy, Garth had admitted committing the charged *offense* described in the plea colloquy; not merely the charged *conduct.* The District Court held:

> "Garth, having voluntarily and intelligently entered a plea of guilty to Count Two of his indictment, has waived his right to collaterally attack his conviction for using or carrying a firearm in relation to a drug trafficking crime in violation of § 924(c)(1) on the ground that there was no factual basis to sustain the conviction."

Memorandum and Order at 10 (Nov. 27, 1996). Thus, the court never reached the merits of Garth's claim.

## II.

Garth argues that his guilty plea to Count 2 was not knowing and intelligent because (1) he was misinformed as to the factual basis for a § 924(c)(1) violation, and (2) he was "hobbled by the ineffective assistance of counsel" at the plea stage.[7]

---

**5.** *See United States v. Denardi,* 892 F.2d 269 (3d Cir.1989).

**6.** Garth filed a pro se "Request for Extra Speedy Judicial Performance." The District Court treated Garth's motion as one "claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States," pursuant to 28 U.S.C. § 2255.

**7.** Garth also argues in his brief that (1) his counsel was ineffective for failing to argue

that he was a "minimal participant" entitled to a sentence reduction under § 3B1.2(a) of the Sentencing Guidelines, and (2) his sentence was excessive under an abuse of discretion standard. We generally accord wide latitude to pro se petitions for relief. However, we do not reach either of these claims because Garth did not even remotely raise these sentencing issues before the District Court. *See United Parcel Serv., Inc. v. Intern. Broth. Local No. 430,* 55 F.3d 138, 140 n. 5 (3d Cir.1995) ("It is the general rule that issues raised for the first time at the appellate level

Appellant's Br. at 13–14. He also contends that if "on the face of the record the court lacked the power to impose the sentence," he is not barred from collaterally challenging a conviction based on a guilty plea. Appellant's Br. at 14 (citing *United States v. Broce*, 488 U.S. 563, 575, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989)). The government argues that Garth procedurally defaulted by failing to challenge the validity of his plea on direct appeal, and that Garth can not overcome the default. Appellee's Br. 9–10.

In *Bousley v. United States*, 523 U.S. 614, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998), the Supreme Court delineated the circumstances under which a defendant may rely upon *Bailey* to collaterally challenge a pre-*Bailey* guilty plea under § 924(c). There, Kenneth Bousley had pled guilty to "using" a firearm in violation of 18 U.S.C. § 924(c)(1), before the Supreme Court decided *Bailey*. Approximately four years later, Bousley filed a habeas petition under 28 U.S.C. § 2255 collaterally challenging his conviction.[8]

> [He challenged] the factual basis for his guilty plea on the ground that neither the "evidence" nor the "plea allocation" showed a "connection between the firearms in the bedroom of the house, and the garage, where the drug trafficking occurred."

*Bousley*, 118 S.Ct. at 1608. He argued that there was therefore no factual basis to support the court's acceptance of his guilty plea to "using" a firearm in violation of § 924(c). The district court rejected Bousley's argument concluding that the proximity of the seized drugs to the firearm established the factual basis because the gun was readily accessible. Bousley appealed, and while the appeal was pending the Supreme Court decided *Bailey*. Notwithstanding *Bailey*, the court of appeals affirmed the district court's decision and dismissed Bousley's petition. The Supreme Court granted certiorari.

■■■ Before reaching the merits of Bousley's claim the Supreme Court had to decide whether Bousley was procedurally barred from seeking habeas relief.[9] The Court reiterated the well-established rule that a defendant may not attack a guilty plea on habeas unless it has first been challenged on direct review. The Court noted that this rule applied to Bousley's petition, stating that "even the voluntariness and intelligence of a guilty plea can be attacked on collateral review only if first challenged on direct review." *Id.* However, the Court added: "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and 'actual prejudice,' ..." or that he is "actually innocent."[10] *Id.* at 1611 (internal citations omitted); *see also United States v. Sanders*, 165 F.3d 248, 250 (3d Cir.1999).

■■■ Bousley argued that he could establish cause because *Bailey* had not yet been decided when he pled guilty, and

---

will not be reviewed.") (citing *Singleton v. Wulff*, 428 U.S. 106, 120, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976)).

**8.** Bousley actually filed his petition under 28 U.S.C. § 2241, but the court "treated it as a motion under 28 U.S.C. § 2255." *Bousley*, 118 S.Ct. at 1607.

**9.** The Court held that the defendant's underlying claim that his guilty plea was not voluntary or intelligent in light of *Bailey*, was not barred by *Teague v. Lane*, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), because such a claim was neither "new" nor "proce-

dural." *Bousley*, 118 S.Ct. at 1610. Thus, Garth's claim is also not barred under *Teague*.

**10.** The Court also recognized that a defendant is not procedurally barred if the claim could not have been presented earlier without further factual development. *Id.*, 118 S.Ct. at 1610. The Court explained, however, that Bousley's case did not require further *factual* development because his claim of an "unintelligent" plea could have been fully and completely addressed on *direct review* based on the factual record created at the plea colloquy. *Id.* at 1610–11. For the same reasons, this exception does not apply here.

therefore, "the legal basis for his claim was not reasonably available to counsel" when he entered his plea or on direct review. The Supreme Court rejected that argument. The Court held that neither the novelty or futility of a particular legal argument constitutes "cause" for failing to challenge a ruling earlier. *Id.; see also United States v. Powell,* 159 F.3d 500, 501–02 (10th Cir.1998); *United States v. Sorrells,* 145 F.3d 744, 749–50 (5th Cir.1998). Similarly, Garth can not establish cause here merely by arguing that he pled guilty four years before *Bailey* was decided.

▮▮▮▮ It is now well-established that a successful claim of ineffective assistance of counsel under *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), satisfies the "cause" prong of a procedural default inquiry. *See Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986); *Sanders,* 165 F.3d at 250. Here, however, Garth does not argue in either his habeas petition or in his brief before us that his original appellate counsel was ineffective for failing to challenge his plea on direct review. Rather, Garth argues that his attorney was ineffective at the plea stage because counsel never attempted to ascertain whether the factual predicates of the firearms offense were satisfied, to inform him fully as to the nature of those charges, or to otherwise challenge Count 2. This argument clearly goes to the merits of whether his plea was knowing and voluntary, not to whether ineffective assistance "caused" his failure to challenge his conviction earlier.[11]

▮▮▮▮ The second exception to the procedural default bar requires the defendant to establish that "the constitutional error in his plea colloquy 'has probably resulted in the conviction of one who is *actually innocent.'* " *Bousley,* 118 S.Ct. at 1611 (emphasis added). This requires a defendant to establish that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him." *Id.* Thus, in habeas jurisprudence, " 'actual innocence' means factual innocence, not mere legal insufficiency." *Id.* Accordingly, "the Government is not limited to the existing record to rebut any showing that petitioner might make." *Bousley,* 118 S.Ct. at 1611–12. Simply stated, " 'actual' innocence . . . means that the person did not commit the crime." *Johnson v. Hargett,* 978 F.2d 855, 860 (5th Cir.1992).

In *Bousley,* the Supreme Court remanded the appeal to the district court to afford the defendant the opportunity to show that he was "actually innocent" of "using" a firearm in violation of § 924(c)(1), as charged in the indictment. In doing so, the Court noted that the government must also have the opportunity to present additional evidence of the defendant's guilt in order to rebut his claim of innocence. The government was not limited to the record on remand because the defendant had to establish that he was actually innocent. Thus, on remand, the government was allowed to produce "any admissible evidence of petitioner's guilt," relating to the alleged violation of § 924(c), as well as any other more serious charges that were dropped pursuant to the plea agreement between Bousley and the government. *Bousley,* 118 S.Ct. at 1611–12. The Court noted that if Bousley successfully showed actual innocence on remand, the district court then would have to consider the mer-

---

11. We note, however, that in general an ineffective assistance claim which was not raised on direct appeal is not deemed procedurally defaulted for purposes of habeas review. *United States v. De Rewal,* 10 F.3d 100, 103 (3d Cir.1993). The rule is rooted in the recognition that, as in this case, trial counsel is often the same attorney on the defendant's direct appeal, and therefore it would be unrealistic to expect or require that attorney to attack his or her own performance on direct review. In addition, because resolution of ineffective assistance claims often requires consideration of factual matters outside the record on direct appeal, a defendant need not show cause and prejudice for failing to raise a claim of ineffective assistance on direct review. *Id.* Accordingly, such a claim is properly raised for the first time in the district court under § 2255. *Id.*

its of his claim, to wit, whether his plea was intelligently made. *Id.*

Although *Bousley* appears at first blush to be on all fours with the instant appeal, our analytical path is somewhat obscured because the issues decided by the District Court are not framed in the same terms as those Garth raises on appeal. In his original pro se petition, Garth simply argued that there was no factual basis to support his conviction. He did not assert any "cause" for failing to raise this claim earlier, and he did not explicitly argue ineffective assistance of counsel under *Strickland.* The District Court therefore concluded that Garth did not clear the procedural bar, and accordingly, it never addressed Garth's claim. However, Garth was asserting that he was actually innocent. We have long recognized that a pro se petitioner's pleadings should be liberally construed to do substantial justice. *See Lewis v. Attorney General,* 878 F.2d 714, 721 (3d Cir.1989); *United States ex rel. Montgomery v. Brierley,* 414 F.2d 552, 555 (3d Cir.1969). Thus, Garth's failure to specifically articulate his claim as one of "actual innocence" should not preclude review of the merits of his claim. He clearly argued that the government could not satisfy the factual prerequisites of a § 924(c) conviction. When properly viewed through the more forgiving lens used to construe pro se habeas petitions, we conclude that the claim of "actual innocence" was properly before the District Court.

It is, of course, true that "federal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution," and not to review questions of guilt or innocence. *See Herrera v. Collins,* 506 U.S. 390, 404, 113 S.Ct. 853, 122 L.Ed.2d 203 (1993). However, in *Herrera* the Supreme Court explained:

[W]e have held that a petitioner otherwise subject to defenses of abusive or successive use of the writ may have his federal constitutional claim considered on the merits if he makes a proper showing of actual innocence. This rule, or fundamental miscarriage of justice exception, is grounded in the "equitable discretion" of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons. But this body of our habeas jurisprudence makes clear that a claim of "actual innocence" is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.

*Id.* at 404, 113 S.Ct. 853. Thus, under *Herrera* and *Bousley,* because Garth argued in essence that he was "actually innocent" of the firearms offense, the District Court erred in concluding that Garth waived his right to challenge his plea absent "a constitutional bar, apparent on the face of the indictment or the record...."[12]

Not surprisingly, now that he is represented by able appellate counsel, Garth also unambiguously argues that the prosecution, the court, and his attorney misinformed him as to the factual predicates of a § 924(c) violation, and his trial counsel failed to properly prepare and effectively assist him during the colloquy, thus resulting in an unknowing and unintelligent guilty plea. Despite the inarticulate manner in which this rather technical claim was first placed before the District Court, Garth's pro se petition should not be read so strictly as to obfuscate the claim he is making. His assertion that there was no factual foundation for his guilty plea equates to an assertion of a due process violation based upon being sentenced to prison under § 924(c) for con-

12. Here, the District Court also erroneously restricted its analysis on collateral review because Garth pled guilty rather than proceeding to trial. *See, e.g., Bousley, supra; see also Lee v. United States,* 113 F.3d 73, 76 (7th Cir.1997) (fact that § 924(c) conviction arose from plea rather than trial verdict makes no difference in terms of *Bailey* analysis); *United States v. Barron,* 172 F.3d 1153, 1158 (9th Cir.1999) (a collateral challenge to conviction based upon a claim of innocence is not a repudiation of the plea agreement).

duct that he did not know was not criminal under that statute. Because a guilty plea which is neither knowing nor intelligent violates due process, such a claim constitutes a proper constitutional claim for purposes of habeas review. *Bousley,* 118 S.Ct. at 1607; *Parke v. Raley,* 506 U.S. 20, 28–29, 113 S.Ct. 517, 121 L.Ed.2d 391 (1992); *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969); *Buggs v. United States,* 153 F.3d 439, 444 (7th Cir.1998). Therefore, under *Herrera* and its progeny, the district court may also review on habeas whether Garth's plea was knowing and intelligent once he demonstrates his actual innocence. *See, e.g., Bousley,* 118 S.Ct. at 1611–12.

■■■ As other courts of appeals have concluded, the proper procedure under *Bousley* is to remand to the district court to determine whether a defendant is actually innocent of the charged offense when the record supports such a claim. *See, e.g., United States v. Jones,* 172 F.3d 381, 384–85 (5th Cir.1999) (remanding for evidentiary hearing on actual innocence); *United States v. Sanders,* 157 F.3d 302, 306 (5th Cir.1998) (same); *United States v. Hellbusch,* 147 F.3d 782, 784 (8th Cir.1998) (same); *United States v. Benboe,* 157 F.3d 1181, 1184 (9th Cir.1998) (same); *see also, e.g., Luster v. United States,* 168 F.3d 913, 915–16 (6th Cir.1999) (defendant could not establish actual innocence because record supplied "overwhelming evidence of culpability," and therefore, remand was not required).

For example, in *Benboe,* the defendant pled guilty to possession of marijuana with the intent to distribute, and using or carrying a firearm in violation of § 924(c). His plea agreement stipulated that he would receive consecutive sentences of five years on each count, and that he would not take any appeal so long as his total period of incarceration did not exceed ten years. In return, the government agreed to dismiss several remaining counts. Benboe's plea was accepted by the court, and Benboe was sentenced to consecutive sentences of five years on each of the two counts to which he pled guilty. However, following his plea, the Supreme Court decided *Bailey,* and *Benboe* collaterally attacked his sentence under 28 U.S.C. § 2255. He argued that his plea to using or carrying a firearm under § 924(c) was not knowing and intelligent because he did not understand the elements of that offense. The district court held an evidentiary hearing on Benboe's claim, but denied relief. During his plea colloquy, Benboe had admitted growing marijuana for distribution, and police had found a loaded gun in the same room as the marijuana when they arrested the defendant. Benboe also had admitted that he had "possession of the firearm in the use of the [*sic*] drug transaction." 157 F.3d at 1185. The district court denied habeas relief concluding that Benboe had admitted a sufficient nexus between the gun and his drug trafficking to establish a basis for his guilty plea to the carrying prong of § 924(c). The court of appeals, however, noted that:

> The transcript reveals that a firearm was found in or on furniture in the same room where marijuana was found, but no evidence was presented that Benboe carried the firearm on his person or in his vehicle in connection with a drug trafficking crime.

*Id.* at 1185. The court therefore reversed the district court's denial of Benboe's § 2255 petition, and remanded with directions that he be allowed an opportunity to show that he was "actually innocent" of any dismissed charges "that the court determines are more serious than the § 924(c) conviction of which he is innocent." *Id.* The court noted that if Benboe could make such a showing, or if the court on remand concluded that no more serious charges had been dismissed, "the court should consider on the merits whether his please was unintelligent." *Id.; see also, e.g., Jones,* 172 F.3d at 384–85; *Sanders,* 157 F.3d at 306; *Hellbusch,* 147 F.3d at 784.

 Of course, a habeas petitioner can not circumvent the restrictions of the procedural default rule merely by asserting "actual innocence" where the assertion is belied by the record. Here, however, we conclude that the record is consistent with Garth's claim. We emphasize that our examination of the record does not amount to a determination of whether there is sufficient evidence to convict. Rather, we examine the record to determine whether it supports a claim of factual innocence such that remand is required to allow Garth an opportunity to establish his actual innocence. For the reasons that follow we believe that it does.[13]

### III.

The government asserts each of the following theories to argue Garth violated § 924(c): (1) Garth "used" the firearm under *Bailey*; (2) Garth "carried" the firearm under *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 141 L.Ed.2d 111 (1998); (3) Garth "constructively carried" the firearm; and (4) Garth "aided and abetted" the carrying of the firearm.

### A. "Use" under § 924(c).

 In *Bailey*, the [Supreme] Court held, "Section 924(c)(1) requires evidence sufficient to show an active employment of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." The Court further explained that "the active employment understanding of 'use' certainly includes brandishing, bartering, striking with, and most obviously, firing

or attempting to fire, a firearm." However, "if the gun is not disclosed or mentioned by the offender, it is not actively employed and it is not 'used.'" *United States v. Price*, 76 F.3d 526, 528 (3d Cir.1996) (quoting *Bailey*, 116 S.Ct. at 505 & 508). Accordingly, "[i]t is no longer enough that the weapon be available to the defendant; rather, it must have played an active role in the perpetration of the predicate offense beyond emboldening the perpetrator." *Id.*

Here, the record evidence of Garth's involvement with the gun is the following: Garth knew that Wilson had a gun while they were in the train station; Garth first learned that Wilson had a gun as the men were entering the train station; Garth never handled either the gun or the bag containing the gun; and none of the men ever brandished or otherwise employed the gun while in the train station. There is absolutely no evidence that would establish that Garth used the gun under *Bailey*, and the government's argument to the contrary is absolutely inconsistent with the holding of that case, and therefore meritless.

### B. "Carrying" under § 924(c).

 Preliminarily we note that prior to, and during the plea colloquy, and in many of the court documents, the use and carry prongs of § 924(c) were not distinguished either by the court or the prosecution, and in many cases the term "carry" was not even referenced.[14] Indeed, "use or carry" is repeatedly used synonymously with "possession" in this record.[15] Howev-

---

13. In stating that the record requires a remand to allow Garth to establish his actual innocence, we do not mean to suggest that Garth must come forward with evidence before the District Court. He may rest on the record as it now stands and thus require the prosecution to present additional "admissible evidence" of his factual guilt. *See Bousley*, 118 S.Ct. at 1612.

14. For example, the January 7, 1992 Judgment describes Count 2 as "Use of a firearm

during drug trafficking crime." Similarly, during the plea colloquy Judge Bechtle explained the charges in Count 2 as follows: "The second count, the charge against you is the use of a firearm during this event ... That's a violation of U.S. Section 924(c), U.S.Code." App. 32a.

15. For example, both the Government's December 30, 1991 Sentencing Memorandum and its December 30, 1991 Motion for Departure for Substantial Assistance both speak in

er, the terms "use" and "carry" under § 924(c) have distinct meanings and one is not coextensive with the other. *Muscarello v. United States*, 524 U.S. 125, 118 S.Ct. 1911, 1918, 141 L.Ed.2d 111 (1998). Garth could not knowingly and intelligently plead guilty to "carrying" under § 924(c) without knowing what that term meant.

In *Muscarello*, the Supreme Court defined the parameters of the "carry" prong under § 924(c)(1). The Court held that "carries a firearm" is not limited to carrying a firearm on the person; rather, "it also applies to a person who knowingly possesses and conveys a firearm in a vehicle, including in the locked glove compartment or trunk of a car, which the person accompanies." *Muscarello*, 118 S.Ct. at 1913–14. The Court's inquiry in *Muscarello* was limited to whether the term "carry" includes carrying the gun in the glove compartment of one's car as opposed to carrying the gun on one's person. In holding that the former situation could violate § 924(c) the Court noted that Congress intended "carry" in the statute to be afforded its ordinary meaning. *Id.* at 1914. Clearly, "one who bears arms on his person 'carries a weapon.'" *Id.* at 1915. In addition, "the word 'carry' in its ordinary sense includes carrying in a car," even if it is not "directly on the person." *Id.* at 1916. However, the Court cautioned that "carry" is not coextensive with "transport" because "[c]arry *implies personal agency and some degree of possession.*" *Id.* at 1917 (emphasis added). *See also United States v. Spring*, 80 F.3d 1450, 1465 (10th Cir.1996) (carry prong requires possession "through the exercise of dominion or control; *and* transportation.").

Moreover, it is important to note that in *Muscarello*, the defendant admitted during his plea colloquy that he had "carried" the gun in the car "for protection in relation" to the underlying drug offense. *Muscarel-*

*lo*, 118 S.Ct. at 1914. Thus, the colloquy established the required nexus between the "carrying" and the predicate offense. *See also, e.g., Benboe, supra.* The Court emphasized that one could not be convicted of violating § 924(c) absent a showing that the "carrying" was related to a predicate offense. "Congress added ['during and in relation to'] in part to prevent prosecution where guns 'played' no part in the crime." *Muscarello*, 118 S.Ct. at 1918–19.

There is no evidence here that Garth ever directly or indirectly carried the gun. Moreover, although a reasonable juror could infer that the four men came to the train station in some kind of vehicle, and that the gun was in the vehicle that brought them to the train station, there is nothing in the record to suggest that Garth knew that the gun was present until they got to the train station. The record does not even establish that Garth ever carried the bag in which the gun was found at anytime prior to, or subsequent to, arriving at the train station. In fact, the record is to the contrary.

### C. Constructive Possession.

The government argues that there is an adequate factual basis for Garth's plea under the theory that he constructively possessed the gun, and that this is sufficient to support a conviction under § 924(c)(1). Appellee's Br. at 7. There is disagreement among the circuit courts of appeals as to whether a defendant can be guilty of violating § 924(c) based only upon constructive possession. *Compare United States v. Canady*, 126 F.3d 352, 358 (2d Cir.1997) (refusing to recognize violation of "carry" prong based on "constructive possession" theory) *with Napier v. United States*, 159 F.3d 956, 960 (6th Cir.1998) (recognizing that constructive carrying would be sufficient to sustain a conviction

terms of "possession" of a weapon. In addition, during the plea colloquy Judge Bechtle explained:

A fine of up to $250,000 and $100 special assessment, that's what the sentence could

be under the statute under these laws that I have just read to you. Possession of cocaine and having a firearm at the time. App. 32a.

under § 924(c)(1)). We do not decide whether the concept of constructive possession would support a conviction for "carrying" under § 924(c), because even if it did, an adequate foundation for such a conviction requires more than the government proffered during Garth's plea colloquy.

■ The term "constructive possession" has a precise legal meaning:

A person who, although not in actual possession, knowingly has both the *power and the intention* at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

*Blackston,* 940 F.2d at 883 (emphasis added); *see also Jackson v. Byrd,* 105 F.3d 145, 150 (3d Cir.1997) (Becker, J., dissenting). Thus, constructive possession requires an individual to have the power and intent to exercise both dominion and control over the object he or she is charged with possessing. *United States v. Brown,* 3 F.3d 673, 680 (3d Cir.1993). In *United States v. Brown,* 3 F.3d 673 (3d Cir.1993), we held that the circumstantial evidence offered by the government was insufficient to establish that the defendant could exercise dominion and control over drugs found in the house in which she lived. Police executed a search warrant of Brown's house based on information that large quantities of drugs were stored, cut, and packaged for sale there. During the search, the defendant (named Baltimore) used her key to enter the house. After the police discovered drugs and drug paraphernalia, they charged Baltimore along with Brown and another defendant, for possession of drugs with intent to distribute. The prosecution attempted to establish Baltimore's guilt by

evidence that, although she did not own the house, Baltimore lived there, possessed a key to the house, kept some of her belongings there, and told the police that "I am in my own house." However, we concluded that the evidence was insufficient to establish that she had exercised dominion or control over the drugs. *Brown,* 3 F.3d at 681. We reasoned that her knowledge that drugs were there, even coupled with her *ability* to exercise dominion and control over some of the property in the house, did not establish constructive possession of everything, including the drugs, located there.[16]

Here, there is no evidence that Garth had the intent or power to exercise control or dominion over the black bag. The government did not proffer any evidence that Garth owned the bag or anything in it. Mere knowledge that the bag contained the crack cocaine which the men intended to distribute is insufficient to infer that Garth could exert dominion or control over the bag. Garth was not the one giving directions to the group in the train station; Brown was. Moreover, although Garth accompanied Wilson while the latter exercised dominion and control over the gun, that association alone does not magically transform Garth's proximity to Wilson into culpability for all of Wilson's actions, or establish any vicarious responsibility for the gun. "Dominion and control are not established, . . . by 'mere proximity to the [contraband], or mere presence . . . where it is located or mere association with the person who does control the [contraband].'" *United States v. Jenkins,* 90 F.3d 814, 818 (3d Cir.1996) (quoting *United States v. Brown,* 3 F.3d 673, 680 (3d Cir.1993)).

Even if we assume that Garth had access to the black bag because of his relationship with his confederates and his in-

16. Ms. Baltimore's situation in *Brown* is, of course, distinguishable from Garth's situation here because Garth is implicated in the drug distribution, and there was insufficient evidence to implicate Ms. Baltimore in distributing drugs found where she lived. Neverthe-

less, *Brown* is helpful to our analysis here as it shows that the mere potential ability to exercise dominion and control does not establish constructive possession absent the intent to exercise it.

volvement in the drug distribution scheme, access to the bag would not automatically establish that he was constructively carrying the gun inside of it. As noted previously, "carrying" like "use" requires more that mere proximity. "Constructive possession necessarily requires both 'dominion and control' over an object and *knowledge of that object's existence.*" *See United States v. Iafelice*, 978 F.2d 92, 96 (3d Cir. 1992) (emphasis added). Based on the evidence in this record, Garth did not know that any of his co-defendants possessed a weapon until the men had entered the train station, and he did not know that the weapon was in the black bag. Moreover, the colloquy did not establish any intention on his part to use or carry a weapon in connection with the possession or distribution of the drugs in the bag. Therefore, the record does not establish that Garth knowingly had the power or the intent to exert dominion or control over the firearm.

Of course, the fact that the others also had access to the black bag is not the basis for finding that Garth did not constructively possess the black bag. If the doctrine of constructive possession applies under § 924(c), then the doctrine of joint constructive possession applies. However, involvement of multiple actors does not negate the requirement that Garth knowingly have both the power and intent to exercise dominion and control. Based on the record, this element was lacking.

### D. Aiding and Abetting.

The government also argues that Garth can be convicted of violating § 941(c) because he aided and abetted the use and/or carrying of the firearm. We have previously held that to establish liability based upon an aiding and abetting theory, the government must prove (1) that the substantive crime has been committed, and (2) the defendant knew of the crime and attempted to facilitate it. *United States v. Frorup*, 963 F.2d 41, 43 (3d Cir.1992); *United States v. Green*, 25 F.3d 206, 209 (3d Cir.1994); *United States v. Salmon*, 944 F.2d 1106, 1113 (3d Cir.1991) (requiring an intent to facilitate the substantive offense). In addition, we have required proof that the defendant is in some way associated with the substantive offense—"that he participated in it as in something that he wished to bring about, that he sought by his action to make it succeed." *United States v. Bey*, 736 F.2d 891, 895 (3d Cir.1984). Thus, liability for aiding and abetting someone else in the commission of a crime requires the specific intent of facilitating the crime, *United States v. Newman*, 490 F.2d 139, 142 (3d Cir.1974), and mere knowledge of the underlying offense is not sufficient for conviction, *Bey*, 736 F.2d at 895–96.

In *United States v. Price*, 76 F.3d 526 (3d Cir.1996), we held that one could be convicted of aiding and abetting a violation of § 924(c)(1) without ever possessing or controlling a weapon. There, Price and a man named Stubbs were convicted of bank robbery and carrying a firearm during and in relation to the robbery in violation of § 924(c)(1). Only Stubbs possessed a gun. Price never brandished a weapon, nor did the prosecution offer evidence that he ever physically possessed or even touched a gun during the bank robbery. Rather, during the bank robbery, Stubbs brandished a gun while Price jumped over a counter and collected the money. Stubbs clearly used and carried a firearm during the commission of the robbery. We affirmed Price's conviction for violating § 924(c) under an "aiding and abetting" theory. Our decision was based upon the extent to which the actions of Stubbs were intertwined with, and his criminal objectives furthered by, the actions of Price. We concluded that a reasonable jury could infer that Price had prior knowledge that Stubbs was planning to use and carry the gun during the robbery, and that both Stubbs' and Price's roles in the crime were facilitated by the fact that Stubbs brandished a gun while Price scooped up the money. *Price*, 76 F.3d at 530. The actions of each fur-

thered the actions of the other, and the robbery succeeded because of the combined actions of both.

Here, there is currently insufficient evidence to suggest a finding that the conduct of Wilson and Garth was so intertwined that Garth aided and abetted a violation of § 924(c)(1). There is no evidence that Garth attempted to facilitate the carrying of the gun, that he wished to bring about or make that offense succeed, or that the gun was in any way instrumental to his decision to participate in the drug offense. The record merely contains evidence that Garth knew the gun was present. Indeed, based on the record so far, Garth did not even know the gun was in the bag when it was searched. There is not enough here to negate Garth's claim that he is innocent of aiding and abetting the carrying of the firearm.

## IV.

Thus, we conclude that the record as it now stands supports Garth's claim of "actual innocence." Therefore, the District Court erred in dismissing Garth's habeas petition before affording him the opportunity to demonstrate his actual innocence. Accordingly, we remand to the District Court pursuant to *Bousley* to allow Garth to prove his claim of actual innocence, and to give the government the opportunity to produce any additional evidence to refute such a claim. During the course of whatever proceedings the District Court may order, the government may present whatever admissible evidence it has to rebut Garth's claim, even if the evidence was not previously admitted. If the District Court concludes that Garth has met his burden of establishing "actual innocence," it must

then determine whether Garth's guilty plea to Count 2 of this indictment was the result of a knowing and voluntary waiver of the protections afforded him under the Constitution.[17]

Accordingly, we remand for further proceedings consistent with this opinion.

ROTH, Circuit Judge, Dissenting:

On the basis of the record before us, I do not believe that appellant, Marlon Garth, can satisfy the "actual innocence" exception to the bar of procedural default. For that reason, I do not agree with the majority that this case should be remanded to the District Court for further proceedings. I believe that we should affirm the judgment of sentence of the District Court.

Rather than going through each of the theories of possible conviction of the firearm offense, *i.e.*, actual use, actual carrying, constructive possession, and aiding and abetting, I will turn to only one, aiding and abetting, which I believe offers the strongest record to demonstrate that proof of the elements of the charged firearm offense are present in the record.

Garth pled guilty to Count One, knowingly and intentionally possessing more than five grams of cocaine with intent to distribute, and to Count Two, using and carrying a firearm during and in relation to any drug trafficking crime. Count Two charged the offense under both 18 U.S.C. § 924(c)(1) and § 2.[1] Section 2 provides:

(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

17. In its order the District Court notes that Garth did not specifically argue in his pro se habeas petition that his 1991 plea was involuntary or unintelligent. Memorandum and Order at 10 (Nov. 27, 1996). He argued instead that pursuant to *Bailey* he was not guilty of the charged offense. Therefore, despite its assertion that Garth "knowingly and intelligently" pled guilty to the firearms of-

fense, the District Court did not have occasion to hold a hearing or otherwise examine the record to determine whether Garth's plea was knowing or intelligent.

1. Count One also charged aiding and abetting under § 2, as well as charging the substantive offense.

Garth and three companions were arrested in the 30th Street Station, on their way to Ranson, West Virginia, to sell drugs. Garth had made this trip several times before. According to Garth's Grand Jury testimony, they were going to West Virginia because the price that would be paid for the drugs there was four times the price paid in Philadelphia. SA 17a. Garth also testified before the Grand Jury that he was aware that one of his co-defendants was carrying a gun when the group of four men entered the railroad station:

MR. HALL: Your Honor, I was—I asked Mr. Garth before the grand jury: While you were walking into the train station did Michael Gilbert say anything to you?

A. Yes.

Q. What did he say?

A. He said that Keith Wilson had a gun.

Q. Do you remember what his words were?

A. He said: Keith has a gun. And I said I don't know where it is. And then he said, said it's in his waistband. Then we just kept on walking and went in.

SA at 8–9a. (This same testimony was cited by the government at the sentencing hearing. SA 66a.)

At the plea hearing, there was additional evidence cited to support the charges against Garth. The government proffered that Officer Michael Corbett would testify to Garth's admissions regarding the possession of the crack, that Garth knowingly possessed the crack, and also that Garth knew that the gun was present at Thirtieth Street. SA 27a. The government also proffered that Michael Gilbert would testify that he told Garth about the presence of the firearm and that government experts would testify concerning the use of firearms for protection in drug trafficking and about the operability of the gun. SA 28a. The district judge then asked Garth if that essentially was correct, "is that what happened?" Garth replied, "Yes, your Honor." *Id.*

In *United States v. Price,* 76 F.3d 526 (3d Cir.1996), we considered the elements of aiding and abetting a violation of § 924(c)(1). *Price* involved a crime of violence, a bank robbery, rather than a drug trafficking crime as we have here. The elements are easily translated, however, into the drug trafficking context. In *Price,* we determined that the conviction would be affirmed because the accomplice was plainly using and carrying a firearm in connection with a crime of violence; Price probably knew in advance and most certainly knew during the robbery what the accomplice was doing; but Price continued to participate in the offense. *Id.* at 530.

In the case before us, the four defendants were engaged in drug trafficking; they were carrying a gun with them in connection with their drug trafficking; Garth was aware that a gun was involved but even so he continued to participate in the transportation of the drugs to West Virginia; and experts were prepared to testified that drug traffickers carry firearms to protect themselves and their drugs. The fact that Keith Wilson did not take out the gun and brandish it demonstrates the difference between drug trafficking and bank robbery. The fact, however, that Congress intended the enhanced penalty to apply in both situations is clear from the language of § 924(c)(1): "Whoever, during and in relation to any crime of violence or drug trafficking crime … uses or carries a firearm …"

For the above reasons, I conclude that the record belies Garth's claim of "actual innocence." Because I see no need to remand this case for a hearing on that issue, I respectfully dissent.