

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-25-2007

# USA v. Roebuck

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-4726

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"USA v. Roebuck" (2007). *2007 Decisions*. Paper 385.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/385

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

Case No: 05-4726

UNITED STATES OF AMERICA

v.

DONALD ROEBUCK,

Appellant

On Appeal from the United States District Court
for the Middle District of Pennsylvania
District Court No.: 1:03-CR-00172
District Judge: The Honorable Christopher C. Conner

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 19, 2007

Before: SLOVITER, SMITH, and GARTH, *Circuit Judges*

(Filed: September 25, 2007)

OPINION

SMITH, *Circuit Judge*.

This appeal challenges the sufficiency of the evidence to establish that Appellant

Donald Roebuck possessed a firearm and ammunition beyond a reasonable doubt. We

will affirm the judgment of conviction and sentence imposed by the District Court.[1]

On July 9, 2003, the Government filed a two-count Indictment in the United States District Court, Middle District of Pennsylvania, charging Roebuck with one count of violating 18 U.S.C. § 922(g)(1), felon in possession of firearms, and 18 U.S.C. § 924(c), use of firearms in relation to drug trafficking. The Government then filed a Superseding Indictment that added a third count, violation of 18 U.S.C. § 922(g)(1), felon in possession of ammunition. The jury convicted Roebuck of two counts of violating 18 U.S.C. § 922(g)(1), one count for possession of a firearm by a convicted felon, and one count for possession of ammunition by a convicted felon. The Judgment of Conviction was entered on August 17, 2004. After a post-*Booker* remand, Roebuck was sentenced to, inter alia, forty-six months in prison on each count, to run concurrently. The Judgment

---

[1] The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231. We exercise jurisdiction under 28 U.S.C. § 1291. The Government argues that Roebuck has waived his right to appeal the sufficiency of the evidence because this issue was not raised in his first appeal. We exercise plenary review of the Government's argument that Roebuck waived his right to appeal his conviction. *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998). On October 22, 2004, Roebuck appealed from the judgment of sentence on grounds that his sentence was based on the then-mandatory nature of the Federal Sentencing Guidelines, the constitutionality of which were called into question by *Blakely v. Washington*, 542 U.S. 296 (2004). After this initial appeal, the Supreme Court applied *Blakely* to the Federal Sentencing Guidelines in *United States v. Booker*, 543 U.S. 220 (2005). On July 14, 2005, this Court remanded the case for re-sentencing in light of *Booker*. *United States v. Roebuck*, 141 Fed. Appx. 81 (3d Cir. July 14, 2005). Prior to this appeal, neither Roebuck nor this Court has addressed the merits of his sufficiency of the evidence argument. Because this Court had no procedure in place for post-*Blakely* review at the time Roebuck filed his initial appeal, we conclude that Roebuck did not waive the present challenge to his conviction. Roebuck raises only a sufficiency of the evidence claim in the present appeal.

of Conviction was entered on September 15, 2005. The sole issue on this appeal is whether there was sufficient evidence for a jury to conclude that Roebuck was guilty of these two counts beyond a reasonable doubt.

"In reviewing a jury verdict for sufficiency of the evidence, we determine whether there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict. In other words, we must consider the evidence in the light most favorable to the government and affirm the judgment if there is substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt." *United States v. Lore*, 430 F.3d 190, 204 (3d Cir. 2005) (quotations and citations omitted). A defendant carries a "heavy burden" to prove insufficiency. *Id*. The Government may defeat a sufficiency of the evidence challenge on circumstantial evidence alone. *United States v. Bobb*, 471 F.3d 491, 494 (3d Cir. 2006).

A brief discussion of the evidence presented at trial will illustrate why Roebuck's claim must fail. On March 13, 2003, uniformed members of the Harrisburg police department and members of the Harrisburg vice unit executed a search warrant at Roebuck's residence. Relevant to this appeal, the search uncovered a Hi Point .40 caliber semi-automatic pistol ("Hi Point") and a Smith & Wesson .40 caliber semi-automatic pistol ("Smith & Wesson"), as well as .40 caliber and 9 mm ammunition. The search also uncovered over $9000 in cash, crack cocaine, and marijuana. The Hi Point was found in a box on steps leading up to the attic. The Smith & Wesson was found in Roebuck's coat

3

behind a locked door to the attic. The .40 caliber ammunition was found in Roebuck's bedroom, and the 9 mm ammunition was found on a balcony outside of a bedroom. Roebuck's conviction on the two § 922(g)(1) counts related to the Smith & Wesson and the box of .40 caliber ammunition, so the rest of our discussion will focus primarily on this firearm and this ammunition.

At trial, Investigator Lavell Jenkins of the vice squad testified that he advised Roebuck of his constitutional rights, and Roebuck then showed the officer his stash of marijuana. Investigator Jenkins also testified that Roebuck at first denied that there were any guns in the house. Investigator Jenkins stated that, as another officer was coming back downstairs with a green jacket, Roebuck "yelled [Jenkins'] name to get [his] attention, and he indicated that he wanted to advise [Jenkins] that there was a gun basically inside the jacket." Investigator Jenkins testified that Roebuck told him that he had possession of the Smith & Wesson for about two years. The officer who found the Smith & Wesson, Lieutenant John Goshert, testified that he located the loaded gun behind the locked door after asking Roebuck for a key. Investigator Jenkins also testified that a detective recovered the box of .40 caliber ammunition from a bedroom on the second floor.

Roebuck testified that he did not know at the time of the search that there were any firearms or ammunition in the house. Roebuck conceded, though, that he made incriminating statements to Investigator Jenkins regarding both firearms. At trial and

4

again on this appeal, Roebuck admits that he told Investigator Jenkins that he "found one of the firearms and the other belonged to a guy at work." However, Roebuck testified that this statement to Investigator Jenkins was not true. Roebuck testified that "I was doing my best to cooperate with the officer and I accepted responsibility for something that was not mine and that I didn't bring there." On cross-examination, Roebuck also testified that both the money and the crack cocaine found in the green jacket belonged to him, but not the Smith & Wesson.

The next witness for Roebuck, Heath Wells, testified that he, rather than Roebuck, owned both the Smith & Wesson and the Hi-Point firearms. Wells stated that he had lived with Roebuck for five or six weeks, and that he had brought his guns with him. The Hi-Point was registered to Wells, lending credence to this portion of his testimony. With respect to the Smith & Wesson, Wells contended that he found it by his car outside the bar he worked at with Roebuck. When asked about how he saw the Smith & Wesson, Wells stated that "I was standing there talking to someone and just looking around. I mean, I looked around a lot, because you can find a lot of stuff out there. So I've gotten in the habit of just looking around, watching the ground." On cross-examination, Wells claimed that the Smith & Wesson was his gun, even though he previously described the gun as a Glock with black handgrips and a scuff mark. The Smith & Wesson had no black handgrips and no scuff marks. Wells also testified that the .40 caliber ammunition belonged to him, although he did not know how the ammunition ended up in a second

5

floor bedroom.  Similarly, Wells testified that he did not have a key to the attic, and that the attic was not locked when he lived there.  Wells never testified that he put the Smith & Wesson in Roebuck's green jacket.

Roebuck now argues that he never had actual or constructive possession of the Smith & Wesson or the .40 caliber ammunition.  "A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession."  *United States v. Garth*, 188 F.3d 99, 112 (3d Cir. 1999).  The facts of this case were sufficient to show that Roebuck had at least constructive possession of the Smith & Wesson and the .40 caliber ammunition.  First, Roebuck concedes that he lived alone at the time of the March 13, 2003 search.  Second, the jury could have reasonably inferred from the testimony of the officers, Roebuck, and Wells that Roebuck knowingly exercised control over the firearm and the bullets.  The first reasonable inference the jury could have made was that Wells simply lied for his friend, and that Wells never possessed the Smith & Wesson or the ammunition.  Wells inconsistently described the gun, could not explain how the ammunition ended up in the bedroom, and provided a questionable story about how he found the gun by his car.  Along the same lines, the jury could have reasonably disbelieved Roebuck's assertion that he knew about the drugs and money in the green jacket, but not the firearm.  The second reasonable inference the jury could have made was that, even if Wells initially had control

6

of the Smith & Wesson and the ammunition, Roebuck gained control once Wells moved out of Roebuck's house. Wells did not state that he put the Smith & Wesson in the green jacket, and testified that he kept the firearm and the ammunition together. A reasonable jury could have concluded that Roebuck moved both the firearm and ammunition to other places in his home after Wells left. Against the backdrop of both these reasonable inferences is Roebuck's concession that he admitted to Investigator Jenkins that he knew about the Smith & Wesson and the ammunition. At trial and on appeal, Roebuck argues that he made this concession because he wanted to cooperate and because he had to use the bathroom. The jury was not required to accept this story as true.

In light of the several inconsistencies in Roebuck's testimony, the incredible testimony of Heath Wells, the evidence against Roebuck supplied by the testimony of Investigator Jenkins and Lieutenant Goshert, and the discovery of the Smith & Wesson as well as the ammunition, we conclude that there was ample, substantial evidence from which any rational trier of fact could find guilt beyond a reasonable doubt. We will therefore *affirm* the judgment of conviction and sentence.