

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

2-20-2008

# USA v. Lowery

Precedential or Non-Precedential: Non-Precedential

Docket No. 06-4276

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Lowery" (2008). *2008 Decisions.* Paper 1575.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/1575

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 06-4276

_____

UNITED STATES OF AMERICA

v.

WILLIAM LOWERY,

Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 04-cr-00814)
District Judge: Hon. Petrese B. Tucker

Submitted Under Third Circuit LAR 34.1(a)
January 15, 2008

Before: BARRY, CHAGARES, and ROTH, Circuit Judges.

_____

Filed: February 20, 2008

OPINION OF THE COURT

CHAGARES, Circuit Judge.

Defendant William Lowery appeals his conviction and sentence for possession of a

firearm by a felon in violation of 18 U.S.C. § 922(g)(1), claiming that (1) there was

insufficient evidence to support the jury's finding that he knowingly possessed a firearm;

(2) the District Court confused and misled the jury by giving a charge on joint possession; and (3) the District Court erred in including a prior felony conviction in calculating his base offense level and criminal history category. We disagree and will affirm the judgment of the District Court.

I.

As we write only for the parties, we do not set out the facts in great detail. Lowery agreed as a condition of his state parole that he would not possess any firearms, he would obtain permission before changing residences, and he would allow the Pennsylvania Board of Probation and Parole to search his person, property, and residence without a warrant, and seize any object that violated a condition of his parole.

When he was first released on parole, Lowery lived with his family, but shortly thereafter, he moved in with his girlfriend, Fiona Hopkins. He did not tell his parole officer, Harry Gaab, about the move but Gaab became suspicious after visiting the house of Lowery's family and finding none of Lowery's possessions there. Gaab confronted Lowery, and Lowery conceded that he had moved. Gaab then went to Hopkins' address, spoke with her, and she confirmed that Lowery was, in fact, living there.

On May 28, 2004, Lowery reported to Gaab, and signed in, listing Hopkins' address as his address. Following a request from his supervisor, Gaab took Lowery's wallet and keys and conducted a search of the residence, while Lowery was

2

temporarily detained at the parole office. The door to one of the bedrooms was bolted to the floor with a padlock marked U-Haul, where Lowery had worked one year earlier. Gaab opened the lock with one of Lowery's keys, and he and another agent, Rick Oliveros, proceeded to search the room, which appeared to be where Lowery and Hopkins slept. Under the right side of the mattress, at the head of the bed, the parole officers found an automatic pistol tucked inside a small concealment holster with a fully loaded magazine containing six live rounds of ammunition. The gun was less than a foot from the edge of the mattress. The bed was positioned against two walls, so that only the right side, where the gun was found, and the foot of the bed were unobstructed.

The bedroom also contained a night stand, a closet, and two dressers. The night stand was directly to the right of the bed, within arms' reach of the pistol. The agents found photo identification of Lowery on top of the night stand and a manila envelope with mail and documents addressed to Lowery inside the night stand. Under the right side of the bed, below where the officers found the gun, there were six pairs of men's size 13 shoes. Within a few feet of the shoes, also on the right side of the room, stood a dresser with men's toiletries and clothing. A television and March 2004 police citation addressed to Lowery were on top of the dresser. A closet on the right side of the room contained both men's and women's clothing. The clothing closest to the foot of the bed was female apparel; there was men's clothing in the other half of the closet – closest to the right side of the bed and night stand. The dresser to the left

of the entrance to the bedroom contained female hygiene products.

At trial, the parties stipulated, *inter alia*, that Lowery had previously been convicted of a crime punishable by a term of imprisonment exceeding one year, and the gun recovered under the bed had been sold to his sister, Bernadette Lowery.  A jury convicted William Lowery on August 17, 2005.  This appeal followed.

## II.

Lowery claims that his conviction must be reversed because the evidence adduced at trial was insufficient to prove that he knowingly possessed a firearm in violation of 18 U.S.C. § 922(g)(1).  We disagree.

It is well established that appellants face a heavy burden in challenging a jury conviction based on sufficiency of evidence.  "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence.  It is not for us to weigh the evidence or to determine the credibility of the witnesses.  Rather, we must view the evidence in the light most favorable to the government, and will sustain the verdict if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  United States v. Dent, 149 F.3d 180, 187 (3d Cir. 1998) (citations and quotation marks omitted); United States v. Cartwright, 359 F.3d 281, 285-86 (3d Cir. 2004).

We have explained that constructive possession requires that a person

4

"knowingly has both the power and the intention at a given time to exercise dominion or control over a thing." United States v. Garth, 188 F.3d 99, 112 (3d Cir. 1999). Mere proximity or mere presence on the property where contraband is located does not establish dominion or control. United States v. Jenkins, 90 F.3d 814, 818 (3d Cir. 1996).

Lowery argues that he shared the bedroom with Fiona Hopkins, and the evidence "at best established mere presence and proximity." Appellant Br. at 29-30. Yet, the fact that others also have access to a firearm does not preclude a finding of constructive possession. Garth,188 F.3d at 113. Detective Daniel Wade testified at trial that Fiona Hopkins was surprised when she learned that a firearm had been found under her bed. Based on that testimony, the fact that Lowery's sister procured the gun, the U-Haul padlock on the bedroom door, and the evidence suggesting that Lowery slept on the side of the bed where the gun was hidden, a reasonable jury could have inferred that Lowery had constructive possession of the firearm. Lowery's argument is, therefore, without merit.

## III.

Lowery also argues that the District Court confused and misled the jury by giving a joint possession charge, which was not supported by the facts because Lowery's girlfriend was not charged with criminal possession or as a conspirator.

5

Again, we disagree.

We review the District Court's choice of language in a jury instruction for abuse of discretion. A jury instruction does not constitute reversible error if the instruction "fairly and adequately" presents the issues in the case without confusing or misleading the jury. United States v. Ellis, 156 F.3d 493, 498 n.7 (3d Cir. 1998); United States v. Zehrbach, 47 F.3d 1252, 1264 (3d Cir. 1995). We have plenary review over a challenge to jury instructions based on statutory construction and over the interpretation and application of legal precepts. United States v. Schneider, 14 F.3d 876, 878 (3d Cir. 1994).

Before jury selection, the Government requested an instruction regarding joint possession, to which Lowery objected. The District Court overruled the objection and instructed the jury that:

> To possess means to have something within a person's control. This does not necessarily mean that the defendant must hold it physically, that is, have actual possession of it. Possession includes sole and joint possession. Possession also includes both actual and constructive possession. A person who has direct physical control of something on or around his person is then in actual possession of it. A person who is not in actual possession but who has both the power and the intention to exercise control over something is in constructive possession of it. So whenever I use the term "possession" in these instructions, I mean actual as well as constructive possession.

App. 210-11. Contrary to Lowery's contention, "the mere statement to the jury of the words 'joint possession' without any explanation" was neither confusing nor misleading.

6

Appellant Br. at 32. Given that Lowery shared the bed and bedroom with his girlfriend, the District Court did not err in including the concept of joint possession in its charge. Moreover, viewed in its entirety, the charge correctly focused on actual and constructive possession and described the relevant legal standard. United States v. Johnstone, 107 F.3d 200, 204 (3d Cir. 1997). We conclude that the District Court employed the correct legal standard in its charge and did not abuse its discretion with the particular language it used to describe the standard.

## IV.

Finally, Lowery challenges the reasonableness of his sentence, claiming that the District Court impermissibly double counted one of his two prior felony convictions. Lowery argues that a conviction that caused him to be a felon who could not legally possess a weapon must necessarily be considered an element of the offense of illegally possessing a weapon, and therefore, under the Sentencing Guidelines, the District Court should not have considered his prior felony conviction in calculating his criminal history. Lowery's arguments are, however, without merit.

We exercise plenary review over the District Court's interpretation of the advisory Sentencing Guidelines and review the District Court's factual findings for clear error. United States v. Grier, 475 F.3d 556, 570 (3d Cir. 2007) (en banc).

U.S.S.G. § 4A1.2 defines a prior sentence for purposes of computing criminal

history and provides that "[t]he term 'prior sentence' means any sentence previously imposed upon adjudication of guilt . . . for conduct not part of the instant offense." U.S.S.G. § 4A1.2. The application note explains that "[c]onduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct)." U.S.S.G. § 4A1.2, cmt. n.1; see also United States v. Irvin, 369 F.3d 284, 289-92 (3d Cir. 2004). Yet, contrary to Lowery's contentions, none of his prior convictions constituted conduct that was part of the instant offense. Both convictions were for prior incidents unrelated to possession of the weapon in question here. We conclude that the District Court correctly calculated Lowery's sentence.

## V.

For the foregoing reasons, we will affirm the District Court's judgment in all respects.