**Nevin G. SWEGER, Jr., Appellant,**

v.

**Joseph W. CHESNEY; District Attorney of the County of Cumberland; Attorney General of the State of Pennsylvania.**

No. 00–3174.

United States Court of Appeals, Third Circuit.

Argued Nov. 26, 2001.

Filed: June 27, 2002.

508

Peter Goldberger [argued], Law Office of Peter Goldberger, Ardmore, PA, for appellant.

Jaime M. Keating [argued], Chief Deputy District Attorney, Cumberland County Courthouse, Carlisle, Pennsylvania, for appellees.

Before: ROTH, FUENTES, and WEIS, Circuit Judges.

## OPINION OF THE COURT

FUENTES, Circuit Judge.

Petitioner Nevin G. Sweger, Jr. appeals from the District Court's denial of his petition for a writ of habeas corpus. A Pennsylvania jury convicted Sweger in May 1984 of the first-degree murder of his wife, and the state court sentenced him to life imprisonment. Sweger then embarked on a lengthy and tortuous post-conviction review process, which included a direct appeal, two post-conviction relief petitions filed in state court, and a federal habeas application. In his federal petition, Sweger asserts numerous claims of error relating to his trial and direct appeal.

The District Court dismissed all of Sweger's claims. The court concluded that some of his claims were time-barred by the one-year period of limitation under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2244(d)(1), while one of his claims had been procedurally defaulted. Sweger's primary contention on appeal is that the District Court erred in applying the one-year period on an issue-by-issue basis. He argues that the limitations period for his entire habeas petition should have been tolled under 28 U.S.C. § 2244(d)(2) during the time that his second post-conviction relief petition attacking his conviction was pending in state court, even though some of his federal habeas issues were already fully exhausted before the filing of the second state petition.

We agree. We hold that under § 2244(d)(2), the AEDPA limitations period for a habeas corpus petition, including all issues presented in that petition, is tolled during the pendency of a state post-conviction proceeding which challenges the same judgment as does the habeas petition. The District Court, however, did not err in its dismissal of one of Sweger's claims on the basis of procedural default.

We therefore affirm in part and reverse in part, and remand this case to the District Court for it to consider the merits of the claims improperly dismissed as time-barred.

I.

### A. State Court Proceedings

Sweger fatally shot his estranged wife four times with a shotgun, then shot himself in the chin but survived. At his state court trial for murder, Sweger argued that he was under the influence of drugs and alcohol on the day of the shooting, and that he should therefore not be eligible for a first-degree murder conviction, but only for a third-degree conviction. In May 1984, a jury in the Court of Common Pleas for Cumberland County, Pennsylvania convicted Sweger of first-degree murder. The court sentenced him to life imprisonment without parole. After his post-trial motions were denied, Sweger filed a direct appeal to the Pennsylvania Superior Court raising five issues, including challenges to the jury instructions on homicide and on the intoxication defense. In February 1986, the Superior Court denied Sweger's appeal. The Pennsylvania Supreme Court denied Sweger's petition for allowance of appeal in January 1987.

Over six years later, in 1993, Sweger filed a *pro se* petition for relief under the Pennsylvania Post Conviction Relief Act ("PCRA"), 42 Pa.Cons.Stat. §§ 9541, *et seq.* Counsel was appointed and Sweger raised just one issue: ineffective assistance of counsel based on trial and appellate counsels' alleged failure to raise and preserve the issue of the trial court's refusal to allow individual *voir dire* on juror prejudices regarding alcohol. After an evidentiary hearing in March 1994, the trial court denied the petition. The Pennsylvania Superior Court affirmed on October 13, 1994,

and the Pennsylvania Supreme Court denied Sweger's petition for allowance of appeal on March 20, 1995.

On February 1, 1996, Sweger filed a second *pro se* PCRA petition, raising seven claims of ineffective assistance of counsel.[1] The court appointed counsel for the seventh issue only, and informed Sweger that it intended to dismiss the other six issues as meritless but would permit Sweger to proceed *pro se* and file his own brief on the other six issues. After a hearing on the one counseled issue and review of Sweger's *pro se* brief on the other six, the court denied the second PCRA petition on July 12, 1996. The court ordered counsel to file an appeal only with respect to the seventh issue, and noted that Sweger could appeal the other issues *pro se*.

In February 1997, almost three months after the procedural deadline for filing, Sweger filed an application with the Superior Court to file a *pro se* brief *nunc pro tunc* (retroactive to a timely filing) on the other six issues.[2] The Superior Court rejected Sweger's *pro se* application as time-barred, and also affirmed the trial court on the seventh issue, which had been timely briefed by court-appointed counsel. Sweger filed a petition for allowance of appeal on the other six issues with the Pennsylvania Supreme Court. Soon after, court-appointed counsel also filed a petition for allowance of appeal on the seventh issue.

The Prothonotary of the Pennsylvania Supreme Court informed Sweger that two petitions for allowance of appeal had been filed and that Pennsylvania appellate rules prohibited dual representation, so his *pro se* petition for allowance of appeal was discontinued and closed. After Sweger wrote a letter to the Prothonotary requesting reconsideration of his *pro se* filing, the Prothonotary told Sweger that he could file an application requesting leave to file a petition for allowance of appeal. Sweger so applied, and on July 29, 1997, the Pennsylvania Supreme Court denied both Sweger's application and his counsel's petition for leave on the seventh PCRA claim.

## B. Federal Habeas Corpus Proceedings

Sweger filed this federal petition for writ of habeas corpus *pro se* in the Eastern District of Pennsylvania on April 1, 1998. On September 15, 1998, the petition was transferred to the Middle District of Pennsylvania, where Sweger is currently incarcerated at SCI–Frackville. Sweger's habeas petition raised five claims:

A. Ineffective assistance of trial counsel based on counsel's denial of Sweger's right to testify.

B. Ineffective assistance of trial counsel in failing to preserve the issue of denial of individual *voir dire*.

---

1. These seven claims included:
 1. Whether trial counsel was ineffective for failing to argue Sweger's *Miranda* rights regarding an incriminating statement that was not suppressed.
 2. Whether trial counsel was ineffective for failing to object to false testimony at a suppression hearing and at trial.
 3. Whether trial counsel was ineffective for failing to investigate fully and prepare for trial.
 4. Whether trial counsel was ineffective for failing to move for the recusal of the trial judge.

5. Whether the first PCRA counsel was ineffective for failing to move for recusal of the PCRA judge.
6. Whether trial counsel was ineffective for failing to request a jury charge on good character evidence.
7. Whether trial counsel was ineffective for failing to allow Sweger to testify.
App. at 20–21.

2. Sweger alleges that he then retained private counsel for the other six claims, but that after obtaining an extension, counsel did not file a brief on those claims.

C. Disposition by the Pennsylvania Superior Court on direct appeal of challenges to jury instructions in a manner contrary to U.S. Supreme Court precedent.

D. Disposition by the Pennsylvania Superior Court on direct appeal of challenges to the admission of evidence in a manner contrary to Pennsylvania Supreme Court precedent.

E. Ineffective assistance of trial counsel as to three issues: 1) failure to argue Sweger's *Miranda* rights; 2) failure to object to false testimony; and 3) failure to investigate fully and prepare for trial.[3]

Issue A was raised by court-appointed counsel in Sweger's second PCRA petition and exhausted when the Pennsylvania Supreme Court denied review on July 29, 1997. Issue B was raised in Sweger's first PCRA petition and exhausted when the Pennsylvania Supreme Court denied the petition for appeal on March 20, 1995. Issues C and D, raised on direct appeal, were exhausted when the Pennsylvania Supreme Court denied Sweger's petition for appeal on January 9, 1987. Issue E was raised as part of Sweger's *pro se* claims in the second PCRA petition, and exhausted also on July 29, 1997.

On October 7, 1998, a Magistrate Judge issued a Report and Recommendation to the District Court, concluding that the petition should be dismissed under *Rose v. Lundy*, 455 U.S. 509, 518–21, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982), because it contained both exhausted claims (Issues A–D) and what the Magistrate Judge deemed to be an unexhausted claim (Issue E). The Magistrate Judge also suggested that Issues B, C, and D were time-barred by the one-year statute of limitations imposed by the AEDPA. *See* 28 U.S.C. § 2244(d)(1)(A).

The District Court adopted the Magistrate Judge's report in part and rejected it in part. The court agreed with the Magistrate Judge that Issues B, C, and D were time-barred. The court applied the AEDPA limitations period to each issue individually, reading the AEDPA to allow that "potential petitioners could file claims under § 2254 on or before April 23, 1997, for all *claims* arising before the effective date." App. at 28 (emphasis added). Examining each claim individually, the court concluded that, because Sweger exhausted his state remedies as to Issues B, C, and D before April 24, 1996, the effective date of the AEDPA, the statute of limitations on these claims extended until April 23, 1997. Since Sweger did not file his habeas petition until nearly a year later—on April 1, 1998—the court dismissed issues B, C, and D as time-barred. The court held that Issues A and E were timely presented because Sweger's habeas petition was filed within one year of July 29, 1997, the date on which those issues were exhausted in state court. *Id.* at 29–30.

Regarding Issue E, the court held that the claim was constructively exhausted but procedurally defaulted because Sweger's *pro se, nunc pro tunc* application to file his untimely brief with the Pennsylvania Superior Court, and his application for leave to file a petition for allowance of appeal to the Pennsylvania Supreme Court, were both denied on procedural grounds. The District Court remanded for the Magistrate Judge to consider the merits of Issue A and whether Sweger could meet his burden of demonstrating cause and prejudice to excuse the procedural default of Issue E.

---

**3.** The District Court and the parties refer to the claims raised in Sweger's habeas petition by letter (Issues A, B, C, D, E), and we do the same.

Sweger objected to the dismissal of Issues B, C, and D on statute of limitations grounds, and filed a motion for reconsideration. The District Court denied this motion for reconsideration on February 8, 1999. The court stated:

[T]he issues dismissed by this Court *were not raised* in the second post-conviction relief petition. Therefore, the statute of limitations does apply, barring those issues from consideration by this Court.... Petitioner seems to be under the impression that since he brought a second post-conviction relief petition which was not finalized until July 29, 1997, any and all claims raised in his habeas corpus petition filed within one year from that date should not be separately required to meet the statute of limitations provision imposed by the AEDPA. Petitioner is mistaken. The one year statute of limitations period applies to *each and every claim* on an independent basis.

*Id.* at 37 (emphasis in original).[4]

The Magistrate Judge issued an order on January 28, 1999, requiring briefing by the Commonwealth and inviting Sweger to reply to the Commonwealth's response.

Regarding procedural default, the order stated in underlined text:

(4) The response and any reply shall specifically address the question of whether petitioner's "Issue E" is barred under the cause and prejudice standard by the procedural default in state court, and in any event, shall address the merits of petitioner's "Issues A & E"

*Id.* at 35. The Commonwealth's brief noted that the Magistrate Judge asked it to respond to the procedural default question, but in the argument section, the Commonwealth only argued that Issue E should be denied on the merits. It did not make any argument regarding cause and prejudice, but it also did not expressly waive its procedural default defense.

On September 27, 1999, the Magistrate Judge recommended that Issue A be dismissed on the merits and Issue E be dismissed because Sweger could not establish sufficient cause and prejudice for his procedural default.[5] Sweger filed objections to the report, chiefly arguing that he need not show cause and prejudice because he presented a claim of actual innocence of first-degree murder. Sweger sought to demonstrate his actual innocence by pointing to the scientific testimony presented by his expert at trial regarding diminished capacity. Sweger also argued that, if counsel had informed him of his right to testify, he would have been a trustworthy witness and could have supplemented his expert witness's testimony, thereby establishing his innocence.

On February 7, 2000, the District Court adopted the Magistrate Judge's report and dismissed Sweger's petition. The court endorsed the Magistrate Judge's disposition of Issue A on its merits. As to Issue E, the District Court agreed that Sweger could not establish cause and prejudice, and held that Sweger's actual innocence claims were meritless. The District Court also denied Sweger a Certificate of Appealability ("CAPP").

---

**4.** Sweger then appealed the dismissal of Issues B, C, and D to this Court. This Court dismissed the appeal for lack of jurisdiction as an interlocutory appeal on July 6, 1999.

**5.** Sweger's proffered cause was the ineffective assistance of his retained private counsel for the second PCRA petition. The Magistrate Judge concluded that, because no right to counsel exists in post-conviction proceedings, Sweger could not claim ineffective assistance. The Magistrate Judge also found that no external factor impeded Sweger's efforts to raise his claims in state court.

After proceeding *pro se* in the District Court, Sweger retained private counsel for this appeal. Sweger decided not to seek a CAPP for Issue D (regarding evidentiary rulings) because counsel conceded it did not present a violation of a constitutional right. Thereafter, a motions panel of this Court granted Sweger a CAPP "on the issue of whether the District Court erred in dismissing issues 'B' and 'C' as time-barred by AEDPA's period of limitations." App. at 72. This Court denied a CAPP for Issues A and E. Upon Sweger's motion for reconsideration, the same motions panel of this Court expanded the CAPP to include Issue E, stating that "jurists of reason would find it debatable whether the defense of procedural default was waived in the District Court." *Id.* at 73. We also instructed the parties to "address the procedural default aspects and the merits of Issue 'E' in their briefs." *Id.* Therefore, jurisdiction in this Court is proper over Issues B, C, and E under 28 U.S.C. §§ 1291 and 2253.

## II.

We first consider the District Court's dismissal of Issues B and C on statute of limitations grounds. This Court has plenary review over AEDPA statute of limitations issues. *See Nara v. Frank*, 264 F.3d 310, 314 (3d Cir.2001).

The AEDPA, which became effective on April 24, 1996, establishes a one-year statute of limitations for federal habeas corpus petitions filed by a person in state custody. The statute states, in relevant part:

(d)(1) A 1–year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of—

(A) the date on which the *judgment* became final by the conclusion of direct review or the expiration of the time for seeking such review . . .

28 U.S.C. § 2244(d) (emphasis added). To avoid making this limitations period impermissibly retroactive, this Court established a one-year grace period for petitioners like Sweger whose convictions became final before April 24, 1996. *See Burns v. Morton*, 134 F.3d 109, 111 (3d Cir.1998). Such petitioners may not have their petitions dismissed as untimely if they filed their habeas petition before April 23, 1997. *See id.*

This appeal requires us to construe the AEDPA's tolling provision, 28 U.S.C. § 2244(d)(2), which states:

The time during which a properly filed application for State post-conviction or other collateral review *with respect to the pertinent judgment or claim* is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(2) (emphasis added).

We must decide whether this tolling provision applies on a claim-by-claim basis, requiring at least one or more of the issues raised in the state collateral proceeding to be included in the federal habeas petition, or whether a state post-conviction proceeding attacking a judgment of conviction tolls the period of limitations for the entire habeas petition attacking that same judgment.

This question of statutory construction has never been squarely decided by this Court, but we find guidance in the opinions of three of our sister circuits which have addressed this issue.[6] The Ninth Circuit

6. Although this question is one of first impression in this Circuit, we have, on several occa-

has held that "AEDPA's period of limitation is tolled during the pendency of a state application challenging the pertinent judgment, even if the particular application does not include a claim later asserted in the federal habeas petition." *Tillema v. Long*, 253 F.3d 494, 502 (9th Cir.2001). The Seventh Circuit concurred, concluding that "[a]ny properly filed collateral challenge *to the judgment* tolls the time to seek federal collateral review." *Carter v. Litscher*, 275 F.3d 663, 665 (7th Cir.2001) (emphasis in original). Both of these courts thoroughly rejected the Sixth Circuit's contrary view that "a state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question ... does not toll the one-year AEDPA statute of limitations." *Austin v. Mitchell*, 200 F.3d 391, 395 (6th Cir.1999), *cert. denied*, 530 U.S. 1210, 120 S.Ct. 2211, 147 L.Ed.2d 244 (2000).

### A.

■ We conclude at the outset that the District Court erred in holding under the AEDPA that separate one-year limitations periods apply to each claim raised in a habeas petition, and that each limitations period runs from the exhaustion of state remedies for each claim. The court held that the one-year limitations period for Issue B ran from March 20, 1995, when the Pennsylvania Supreme Court denied review of the first PCRA petition. For Issue C, the court found that the limitations period ran from January 9, 1987, when the Pennsylvania Supreme Court denied review on direct appeal. Because each of these dates occurred before the effective date of the AEDPA, April 24, 1996, the court found that the limitations grace period on these claims expired on April 23, 1997.

■ However, the AEDPA expressly establishes that the limitations period applies "to an *application* for a writ of habeas corpus" and runs from "the date on which the judgment became final ..." 28 U.S.C. § 2244(d)(1) (emphasis added); *see, e.g., Nara*, 264 F.3d at 314–15. This provision makes no mention of a limitations period for individual claims in a habeas petition. It clearly applies to the entire habeas petition and runs from the date on which the judgment that the habeas petition attacks became final. The District Court's reading is contrary to the plain language of § 2244(d)(1).

■ Under a proper reading of § 2244(d)(1), the court would have found that because Sweger's judgment became final on March 10, 1987,[7] well prior to the

---

sions, strongly intimated without directly holding that § 2244(d)(2) tolls the limitations period for the entire habeas petition without regard to particular claims, so long as the state post-conviction proceeding was properly filed and challenged the same judgment of conviction as the habeas petition. *See Stokes v. District Attorney of County of Philadelphia*, 247 F.3d 539, 541 (3d Cir.2001) (stating that the "time for filing the federal habeas petition at issue ... was tolled under 28 U.S.C. § 2244(d)(2), so long as the state petition was pending"); *Morris v. Horn*, 187 F.3d 333, 337 (3d Cir.1999) (stating that if a second PCRA petition was properly filed in state court, the habeas statute of limitations would be tolled

"because that petition was filed before the first one was concluded, and it remains pending in state court"); *Lovasz v. Vaughn*, 134 F.3d 146, 149 (3d Cir.1998) (holding that under § 2244(d)(2), because petitioner's second PCRA petition was pending in state court when the AEDPA took effect, the habeas limitations period was tolled during the time of pendency).

7. "[A] state court criminal judgment is 'final' (for purposes of collateral attack) at the conclusion of review in the United States Supreme Court or when the time for seeking certiorari review expires." *Kapral v. United States*, 166 F.3d 565, 575 (3d Cir.1999).

effective date of the AEDPA, Sweger had until April 23, 1997 to file his habeas petition, absent tolling. Under its misapprehension of § 2244(d)(1), the District Court nonetheless found that Sweger had until April 23, 1997 to file Issues B and C, because the dates on which these issues were exhausted also were prior to the effective date of the AEDPA. Therefore, while the District Court's error did not directly affect the outcome of this case, its faulty, claim-specific view of § 2244(d)(1) contributed to its misreading of § 2244(d)(2)'s tolling provision and suggests that it fundamentally misinterpreted the AEDPA's statute of limitations.

### B.

Sweger concedes that his federal habeas petition is time-barred unless his second PCRA petition tolls the limitations period for his entire petition. This is because Sweger filed his habeas petition on April 1, 1998, nearly one year after the expiration of the one-year grace period. He argues that § 2244(d)(2) tolled the habeas limitations period during the time in which his second PCRA petition was pending.[8] He contends that because the second PCRA petition was "with respect to the pertinent judgment"—i.e. it attacked his judgment of conviction and sentence—the statute of limitations was tolled for his entire habeas petition even though the petition raised some issues that were not

raised in the second PCRA petition. Sweger's second PCRA petition was filed on February 1, 1996, and became final when the Pennsylvania Supreme Court denied petition for leave to appeal on July 29, 1997. He concludes that the habeas limitations grace period did not begin to run until the second PCRA petition was no longer pending, and therefore he had one year from July 29, 1997 to file his habeas petition. Since Sweger filed his habeas petition on April 1, 1998, well within this one-year period, he argues that the District Court erred in dismissing Issues B and C as time-barred.

The District Court did not mention the tolling provision at all. However, the court suggested that it was familiar with the tolling provision. The court noted, in denying Sweger's motion for reconsideration, that Issues B, C, and D *"were not raised* in the second post-conviction relief petition" and "[t]herefore, the statute of limitations does apply." App. at 37 (emphasis in original). Yet the court did not cite to any case or other authority, nor did it provide any reasoning or engage in any explicit statutory analysis to support its conclusion that "[t]he one year statute of limitations period applies to *each and every claim* on an independent basis" and by implication that the § 2244(d)(2) tolling provision did not apply to Issues B and C. *Id.*[9] As discussed above, the court's holding

---

Since March 10, 1987 marked the expiration of the sixty day period Sweger had to seek certiorari from the U.S. Supreme Court after the Pennsylvania Supreme Court declined to hear his case on direct appeal, Sweger's judgment became final on that date.

**8.** The parties concede that Sweger's second PCRA petition was "properly filed" under § 2244(d)(2). *See Artuz v. Bennett,* 531 U.S. 4, 8, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000) (noting that "an application is *'properly* filed' when its delivery and acceptance are in compliance with the applicable laws and rules

governing filings"); *Lovasz,* 134 F.3d at 148–49 (holding that a second or subsequent PCRA petition is "properly filed" if it is "submitted according to the state's procedural requirements, such as the rules governing the time and place of filing").

**9.** Echoing the District Court's reasoning, the Commonwealth's entire argument in support of the court's decision, aside from quoting the opinion at length, is that Sweger's view would "frustrate the entire purpose of the statute of limitations of the AEDPA. The defendant could extend the statute indefinitely by filing

that the habeas statute of limitations period itself "applies to each and every claim on an independent basis" is flatly incorrect.

Although we do not have the benefit of the District Court's full reasoning, we assume that it must have read the phrase "with respect to the pertinent judgment or claim" in § 2244(d)(2) to mean that a state post-conviction proceeding only tolls the habeas limitations period as to each individual claim raised in the state proceeding and not as to the whole habeas petition. The court's reading of § 2244(d)(2) apparently links the limitations period with the exhaustion requirement, because, in the court's view, tolling does not apply unless the state post-conviction proceeding served to exhaust the issues brought in the habeas petition.

The Sixth Circuit has similarly construed § 2244(d)(2) to serve exhaustion purposes. In *Austin*, the petitioner brought a state post-conviction proceeding raising two claims. After that petition was denied, petitioner then filed a federal habeas petition that included four claims, but neither of the issues raised in the state post-conviction proceeding. The timeliness of his habeas petition depended on whether his post-conviction proceeding tolled the limitations period. The court held that, because "[t]olling is the complement of the exhaustion requirement," . . . "a state petition for post-conviction or other collateral review must present a federally cognizable claim for it to toll the statute of limitations pursuant to 28 U.S.C. § 2244(d)(2)." *Austin*, 200 F.3d at 395. The court found that only one of his two state post-conviction petition claims, an ineffective assistance of appellate counsel claim, was federally cognizable. However, this specific ineffective assistance claim was "simply not one of the four grounds of

P.C.R.A. petition after P.C.R.A. petition."

[Petitioner's] federal habeas petition." *Id.* The court reasoned:

> Just as such state review must concern a federally cognizable claim to toll the AEDPA period of limitation, so also the rule should be that such review must concern a federally cognizable claim that is being made in the instant habeas petition. Otherwise, the purpose of tolling, which is to provide the state courts with the first opportunity to resolve the prisoner's federal claim, is not implicated.

*Id.* The court therefore refused to toll the AEDPA limitations period and affirmed the dismissal of the petition as untimely. Under the Sixth Circuit's rule announced in *Austin*, "a state petition for post-conviction or other collateral review that does not address one or more of the grounds of the federal habeas petition in question . . . does not toll the one year AEDPA statute of limitations." *Id.*

 Notably, however, neither the Sixth Circuit's opinion in *Austin* nor the District Court's opinion in this case engaged in any meaningful analysis of the actual text of § 2244(d)(2). "In any case turning on statutory interpretation, our goal is to ascertain the intent of Congress. To accomplish this goal, we begin by looking at the statute's language. If the language is plain, we need look no further." *Ross v. Hotel Employees and Restaurant Employees Int'l Union*, 266 F.3d 236, 245 (3d Cir.2001). We find that the District Court's reading of the statute and the Sixth Circuit's rule lack support in the plain language of § 2244(d)(2), and we join the Ninth and Seventh Circuits in rejecting them entirely.

Section 2244(d)(2) states, "the time during which a properly filed application for State post-conviction or other collateral re-

Commonwealth. Br. at 12.

view *with respect to the pertinent judgment or claim* is pending shall not be counted toward any period of limitation under this subsection." 28 U.S.C. § 2244(d)(2) (emphasis added). Reading this language to require that the state post-conviction proceeding raise the *claims* contained in the habeas petition ignores the use of the word "judgment" in the statute. *See Carter,* 275 F.3d at 665 ("*Austin* reads the word 'judgment' out of § 2244(d)(2) and tolls the time only while a particular 'claim' ... is before the state court. That is just not what the statute says. Any properly filed collateral challenge *to the judgment* tolls the time to seek federal collateral review.") (emphasis in original).

Furthermore, when coupled with the District Court's erroneous, claim-specific view of the § 2244(d)(1) limitations period itself, the District Court's reading would render the tolling provision irrelevant. If the state post-conviction proceeding served to exhaust claims later brought in the federal habeas petition, and if, as the District Court held, the habeas limitations period for each of the claims did not begin until the conclusion of those proceedings (i.e. until each claim was exhausted), then tolling during the pendency of the state collat-

eral proceeding would be unnecessary. If the state collateral proceeding involved claims not brought in a later federal habeas petition, then tolling would not apply because, according to the District Court, the tolling provision applies only on a claim-by-claim basis to claims raised in the state proceeding. Therefore, the District Court would effectively write the tolling provision out of the AEDPA. We surely cannot approve of such reasoning. *See Trustees of Amalgamated Ins. Fund v. Sheldon Hall Clothing, Inc.,* 862 F.2d 1020, 1023 (3d Cir.1988) (instructing that "it is a canon of statutory construction that a statute should be interpreted, wherever possible, to give effect to all of its component parts") (*citing Mountain States Tel. & Tel. Co. v. Santa Ana,* 472 U.S. 237, 249, 105 S.Ct. 2587, 86 L.Ed.2d 168 (1985) and *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 60 L.Ed.2d 931 (1979)).[10]

■ As with the interpretation advocated by the Sixth Circuit, the District Court's view also fails to give the words "judgment" and "claim" separate meanings despite the fact that the words are separated in the statute by the disjunctive term "or." "[C]anons of construction ordinarily suggest that terms connected by a disjunc-

---

10. We note that the District Court in this case went well beyond even the limited scope of *Austin* in applying the tolling and limitations provisions on a claim-by-claim basis. In this case, Issues A and E of Sweger's habeas petition were raised in his second PCRA petition. For tolling to apply, *Austin* only required that the state proceeding raise "one or more of the grounds of the federal habeas petition." *Austin,* 200 F.3d at 395. The Sixth Circuit did not mandate that the state proceeding raise *every* issue raised in the federal petition, nor did it apply the limitations period on a claim-by-claim basis. Even under the Sixth Circuit's reading of § 2244(d)(2), the limitations period applicable to Sweger's habeas petition would be tolled during the pendency of his second PCRA petition.

*Austin,* itself, rests on untenable reasoning, yet the District Court's claim-by-claim approach goes even further than did *Austin.* The period of limitation to which tolling applies in this case is the one-year limitations period on "an *application* for a writ of habeas corpus." 28 U.S.C. § 2244(d)(1) (emphasis added). As discussed above, this period does not apply on a claim-by-claim basis, but rather governs the entire habeas petition. Therefore, if tolling applies, the entire petition, rather than individual claims, enjoys the benefit of tolling. The District Court erred in applying both the underlying limitations period and the tolling provision on a claim-by-claim basis.

tive be given separate meanings unless the context dictates otherwise." *United States v. Urban,* 140 F.3d 229, 232 (3d Cir.1998). The Ninth Circuit, in rejecting *Austin,* assessed the context of § 2244(d)(2). The court examined § 2244(d)(1), and correctly concluded that Congress understood the distinction between "judgment" and "claim," and, therefore, "did not intend that the first word employed in the provision be ignored." *Tillema,* 253 F.3d at 500.[11] Section 2244(d)(1) provides that the period of limitations runs from the latest of several possible dates, including "(A) the date on which the *judgment* became final ..." or "(D) the date on which the factual predicate of the *claim* or *claims* presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2244(d)(1) (emphasis added). Therefore, the Ninth Circuit reasoned from this context that "[s]ection 2244(d)(2) tracks the language of section 2244(d)(1) in providing for statutory tolling so long as the state collateral petition *either* attacks the pertinent judgment or contains the pertinent claim." *Tillema,* 253 F.3d at 500 (emphasis in original).

This interpretation satisfactorily accounts not only for the use of the word "judgment" in the provision, but also for the use of the word "claim." As the Ninth Circuit noted, "[a]lthough it is true that in most cases a state application that includes a pertinent claim will also, as a matter of course, relate to the pertinent judgment, such will not always be the case." *Id.* at 500 n. 7. The court cited examples such as

habeas petitions challenging details of death penalty application or other matters with "no bearing on the underlying judgment of conviction and sentence." *Id.* Therefore, this reading does not render the word "claim" surplusage. We also agree with the Ninth Circuit that Congress's inclusion of the word "pertinent" is "simply a shorthand way of saying, 'the judgment of conviction and sentence in the state court that is being contested in the federal habeas proceeding.' " *Id.* at 500 n. 8.

### C.

As a matter of plain language, a properly filed state post-conviction proceeding challenging the judgment tolls the AEDPA statute of limitations during the time the state proceeding is pending. Because the statutory language is clear, both the Supreme Court and our own precedent dictate that we need not examine policy considerations such as the alleged linkage between tolling and exhaustion relied upon in *Austin* and perhaps by the District Court here. When there is "only [one] permissible interpretation of the text," ... "[w]hatever merits ... policy arguments may have, it is not the province of [courts] to rewrite the statute to accommodate them." *Artuz v. Bennett,* 531 U.S. 4, 10, 121 S.Ct. 361, 148 L.Ed.2d 213 (2000). Even if we were to examine the exhaustion implications, "the statute of limitations (which is the issue before us in this case) and the exhaustion doctrine (which is not)

11. Petitioner in *Tillema,* in addition to filing other state proceedings, filed a "Motion to Vacate Illegal Sentence and Remand for a Proper Sentencing Hearing" in October 1995. In August 1998, almost three years after the motion was filed, the state supreme court denied the motion. In September 1998, petitioner filed a new federal habeas petition and argued that the period of limitations was tolled by the second "Motion to Vacate,"

which only became final one month prior to his federal filing. The state argued that tolling did not apply because the "Motion to Vacate" did not include a claim raised in the federal habeas petition, and that it was "not enough ... that[Petitioner's Motion] sought relief with respect to the same *judgment." Tillema,* 253 F.3d at 499 (emphasis in original).

impose entirely distinct requirements on habeas petitioners; both must be satisfied before a federal court may consider the merits of a petition." *Tillema,* 253 F.3d at 502.

Furthermore, our plain reading of the tolling provision does not undermine exhaustion concerns; quite the opposite, it advances the goals of federalism and comity enshrined in the AEDPA and the exhaustion requirement. Tolling the habeas limitations period while a state collateral proceeding is pending allows the state courts every available opportunity to resolve all constitutional claims before federal courts consider such claims in a habeas petition. By not penalizing petitioners who delay filing federal habeas petitions until their state post-conviction proceedings are concluded, tolling also encourages petitioners to utilize their state court options fully before filing federal habeas petitions. *See Carter,* 275 F.3d at 665 ("A state court must be given the first opportunity to address the federal issue, but this exhaustion requirement can be satisfied on direct appeal as well as on collateral attack.... A state collateral proceeding based solely on state-law issues may avoid the need for federal relief, and a tolling rule permits prisoners to pursue such theories in state court without jeopardizing their ability to raise the federal constitutional issues later in federal court, if that proves to be necessary.") (internal citations omitted); *Tillema,* 253 F.3d at 501 ("[W]hen a state court is willing to entertain a challenge to the validity of the pertinent judgment, a result that is favorable to the petitioner will ordinarily avert any federal intervention regarding the legality of the prisoner's continued confinement.").

▮▮▮ The Commonwealth might be correct in its argument that Sweger's view of § 2244(d)(2) would allow petitioners in some cases to extend the habeas limitations period indefinitely by filing PCRA petition after PCRA petition. Yet, as the Supreme Court instructed in *Artuz,* this consideration cannot trump the plain meaning of the statutory text; we must read the statute to mean what it says. Furthermore, if any problem of "endless" multiple state post-conviction petitions arises, it should properly be addressed by state law, and any attempt to resolve such problems by way of federal habeas law would hinder the federalism and comity interests that are so important in this area. As this Court stressed in an earlier decision allowing a second PCRA petition to be deemed "properly filed" under § 2244(d)(2) and therefore toll the habeas limitations period:

> if a state allows petitioners to file second or subsequent petitions for post-conviction relief, federal courts should not undermine the state's decision by refusing to toll the one-year period of limitation of § 2244(d)(1) where a second or subsequent petition is pending in the state court system. Nor should we discourage petitioners from exhausting all their claims in state court, even by means of a second or subsequent petition for post-conviction relief where permissible under state law, before seeking habeas review in federal court.

*Lovasz v. Vaughn,* 134 F.3d 146, 148 (3d Cir.1998).[12] The District Court's confusing

**12.** Indeed, at oral argument, counsel for the Commonwealth suggested that Pennsylvania has amended the PCRA to render many subsequent PCRA petitions, such as Sweger's, not properly filed and therefore not eligible to trigger AEDPA tolling. *See* 42 Pa.Cons.Stat. § 9545(b) (establishing one-year limitations period for PCRA petitions, including second or subsequent petitions, generally running from date judgment becomes final). This revision indicates that the states are fully capable of addressing any possible negative effects

and impractical claim-by-claim approach is contradicted by the plain text and purpose of the statute, and we reject it.

■ We hold that under § 2244(d)(2), a properly filed state post-conviction proceeding challenging the judgment tolls the AEDPA statute of limitations during the pendency of the state proceeding. Whether the federal habeas petition contains one or more of the claims raised in the state proceeding does not matter as long as the state proceeding and the federal habeas petition attack the same judgment. Here, both Sweger's second PCRA petition and his habeas petition challenge his judgment of conviction. The statute of limitations for his habeas petition was tolled until July 29, 1997, when the second PCRA petition became final, and Sweger had one year from that date to file his habeas petition. Because Sweger filed his habeas petition on April 1, 1998, his petition was timely. The District Court erred in dismissing Issues B and C on statute of limitations grounds. We remand these issues to the District Court to consider them on the merits.

### III.

■ We next examine the District Court's dismissal of Issue E of Sweger's habeas petition on the basis of procedural default. Federal courts may not hear claims that have been procedurally defaulted unless petitioner can meet his burden to excuse the default. This Court has held that "federal courts may not consider the merits of such claims unless the applicant establishes 'cause and prejudice' or a 'fun-

damental miscarriage of justice' to excuse his or her default." *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir.1999) (*citing Coleman v. Thompson,* 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991)).

Sweger argues that the District Court erred in relying on procedural default to dispose of Issue E because, he claims, the Commonwealth waived the defense and the court should not have considered the issue *sua sponte.* He emphasizes that the Magistrate Judge specifically directed the Commonwealth to address the question of procedural default of Issue E in its response to Sweger's petition, but that the Commonwealth merely acknowledged that directive in its brief and proceeded to argue only the merits of Issue E, failing to present any arguments relating to procedural default. Sweger further argues that, if procedural default was properly considered, then the District Court erred in not excusing his procedural default on the basis of his showing of actual innocence.

### A.

■ This Court has ruled that we may, in our discretion, consider whether a claim is procedurally defaulted *sua sponte. Szuchon v. Lehman,* 273 F.3d 299, 321 n. 13 (3d Cir.2001); *Smith v. Horn,* 120 F.3d 400, 408 (3d Cir.1997) (citing cases with similar holdings from the First, Second, Ninth, and Tenth Circuits).[13] A district court also has the discretion to raise the issue *sua sponte. See, e.g., Boyd v. Thompson,* 147 F.3d 1124, 1128 (9th Cir.

that might result from application of the plain meaning of § 2244(d)(2).

**13.** "We retain this discretion because the doctrine of procedural default, while not a jurisdictional rule, 'is grounded upon concerns of comity between sovereigns and often upon considerations of judicial efficiency.' ... 'Be-

cause these concerns substantially implicate important interests beyond those of the parties, it is not exclusively within the parties' control to decide whether such a defense should be raised or waived.'" *Szuchon,* 273 F.3d at 312 n. 13 (quoting *Hardiman v. Reynolds,* 971 F.2d 500, 503 (10th Cir.1992)).

1998) ("Every circuit to consider the issue holds that a habeas court has discretion to raise procedural default sua sponte to further the interests of comity, federalism, and judicial efficiency."); *Magouirk v. Phillips,* 144 F.3d 348, 358 (5th Cir.1998) ("[W]e join our sister circuits by adopting the rule that a federal district court may, in the exercise of its discretion, raise a habeas petitioner's procedural default sua sponte and then apply that default as a bar to further litigation of petitioner's claims."). In making the determination whether to do so, this Court has stated:

> In *Smith*, we explained that … with respect to the sua sponte consideration of nonexhaustion … the values of comity, federalism, judicial efficiency, and the "ends of justice" must be weighed in determining whether to consider the default. We noted that it might be inappropriate to raise a default where "it is evident that a miscarriage of justice has occurred," explaining that a miscarriage of justice in this context " 'should include cases where the record is well developed and the merits strongly support the petitioner's claim.' " ….
>
> [W]e [further] observed in *Smith* that "when the state has never raised an issue in either the district court or this Court we should be even less inclined to raise it sua sponte than when the state either has raised the issue here only belatedly or has raised it in the district court but has not pursued that line of attack in the court of appeals."

*Szuchon,* 273 F.3d at 321 n. 13 (citations omitted).

 Applying these standards to this case, we conclude that the District Court did not abuse its discretion in raising the issue of procedural default *sua sponte.* Sweger correctly claims that, in response to the Magistrate Judge's order that the Commonwealth address the procedural default question, the Commonwealth did not present any procedural default arguments, instead arguing against Issue E wholly on its merits. App. at 110–17. Yet, interests of comity and federalism support consideration of procedural default here because both the intermediate appellate and state supreme court barred Sweger's Issue E claims on procedural grounds.

It is true that the Commonwealth's appellate brief fails to defend the *sua sponte* invocation of the procedural default defense by the District Court. Indeed, the Magistrate Judge and the District Court themselves simply raised the issue without comment or even reference to the standards for *sua sponte* invocation. Sweger thus argues that the District Court erred by not considering factors such as the underlying merits of Issue E. While the Commonwealth did not present any procedural default arguments to the Magistrate Judge or the District Court, the record regarding the procedural default before us is well developed. The Commonwealth's appellate brief explicitly addresses procedural default issues, namely cause, prejudice, and actual innocence. Commonwealth Br. at 13–15. After being requested in the Magistrate Judge's order to address procedural default, Sweger has had several opportunities to present his procedural default arguments, and he has done so both in the objections he filed to the Magistrate Judge's Report and Recommendation and in his appellate brief to this Court. Our review also indicates that Issue E does not "plainly warrant" relief.[14] For these

---

14. The substantive arguments underlying two of Issue E's ineffective assistance claims (suppression of incriminating statements made to police; admission of false testimony) were rejected by the state courts on direct appeal. As for Issue E's third claim, failure of trial

reasons, the District Court did not abuse its discretion, and we will consider the procedural default defense, particularly to determine whether Sweger may establish any excuse for his procedural default of Issue E. *See Szuchon,* 273 F.3d at 321 n. 13 (addressing procedural default *sua sponte* in part because the record on default was well-developed, both parties briefed the default issue, and supplemental briefing or remand would not be required to resolve the issue); *Smith,* 120 F.3d at 408–09 (declining to raise procedural default *sua sponte,* in part because "the record with regard to the procedural default issue itself is sparse" and noting that "where relief is 'plainly warranted,'" courts should decline to raise the issue *sua sponte*).

### B.

▉▉▉▉ We believe that the District Court correctly deemed Issue E constructively exhausted but procedurally default-

ed because the Pennsylvania Superior Court and the Pennsylvania Supreme Court refused to hear the merits of Issue E and, instead, dismissed it on procedural grounds.[15] We also agree with the District Court that Sweger cannot show cause for his procedural default.[16] Sweger primarily argues on appeal that he has shown that he is actually innocent of first-degree murder and thereby has proven a "fundamental miscarriage of justice" sufficient to excuse his default.[17]

▉▉▉▉ We have plenary review over the District Court's determination of Sweger's claim of actual innocence. *Hull,* 190 F.3d at 97. To establish actual innocence, "a habeas petitioner must 'persuade[ ] the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt.'" *Cristin v. Brennan,* 281 F.3d 404, 420 (3d Cir.2002) (quoting *Schlup v. Delo,* 513 U.S. 298, 329, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995)).

counsel to prepare and investigate sufficiently, an initial review of the admittedly incomplete state record before us indicates that counsel was not constitutionally deficient in his preparation.

**15.** "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.' In such cases, however, applicants are considered to have procedurally defaulted their claims ..." *McCandless,* 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)(1)(A)).

**16.** "The Supreme Court has delineated what constitutes 'cause' for the procedural default: the petitioner must 'show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule.'" *Werts v. Vaughn,* 228 F.3d 178, 192–93 (3d Cir.2000), *cert. denied,* 532 U.S. 980, 121 S.Ct. 1621, 149 L.Ed.2d 483 (2001)

(quoting *Murray v. Carrier,* 477 U.S. 478, 488, 106 S.Ct. 2639, 91 L.Ed.2d 397 (1986)). The District Court here found that Sweger's asserted causes, chiefly ineffective assistance of PCRA counsel, were insufficient because there is no right to counsel for state post-conviction proceedings and, therefore, no claim of constitutionally ineffective assistance of counsel may be made.

**17.** As we did in *Glass v. Vaughn,* 65 F.3d 13 (3d Cir.1995), we assume *arguendo* for purposes of this opinion that the actual innocence test applies in a non-capital case where "there is evidence that defendant committed the crime but argues that he or she was responsible for a lesser degree of guilt." *Glass,* 65 F.3d at 16. In *Glass,* petitioner argued that he was actually innocent of first-degree murder because of his diminished capacity and instead was guilty only of third-degree murder. This is precisely Sweger's claim here. We again noted this assumption without resolving the question of whether actual innocence applies in *Cristin v. Brennan,* 281 F.3d 404, 421–22 & n. 17 (3d Cir.2002).

Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). The Supreme Court has required a petitioner "to support his allegations of constitutional error with *new reliable evidence*—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851 (emphasis added); *see also Cristin*, 281 F.3d at 420. "Because such evidence is obviously unavailable in the vast majority of cases, claims of actual innocence are rarely successful." *Schlup*, 513 U.S. at 324, 115 S.Ct. 851; *see also Werts v. Vaughn*, 228 F.3d 178, 193 (3d Cir.2000) (noting that the actual innocence exception "will apply only in extraordinary cases").

 Sweger argued to the District Court that scientific evidence presented at trial regarding his diminished capacity proved that he was innocent of first-degree murder, and that trial counsel's ineffective assistance in failing to allow Sweger to testify deprived the jury of trustworthy evidence which would have also proven him innocent of first-degree murder. The District Court rejected Sweger's reliance on the scientific evidence since that evidence was not new and was deemed unpersuasive by the jury. The District Court held that Sweger presented no other new evidence or witnesses, and, because his ineffective assistance claim (framed as Issue A in his habeas petition) was meritless and unsupported by the record, Sweger could not make a colorable claim of factual innocence.

 New reliable evidence is almost always required to establish actual innocence.[18] In *Glass v. Vaughn*, 65 F.3d 13 (3d Cir.1995), petitioner did not argue diminished capacity at his trial but presented new evidence of it in his habeas petition in an attempt to show that he was actually innocent of first-degree murder, and only guilty of third-degree murder. We still rejected petitioner's actual innocence claim because, based on all of the evidence, including new evidence, we could not "conclude that no rational juror would have voted to convict [petitioner] of first-degree murder." *Id.* at 17 (emphasis in original). Here, Sweger argued diminished capacity at trial, and the jury rejected that defense. Sweger also argues that prejudicial and inadmissible evidence impeded the jury's ability to reach a fair verdict. Many of his contentions in this regard were considered and denied at various points during Sweger's direct appeal and in his two PCRA petitions. Even if they were not, Sweger's arguments at best allege the *legal* insufficiency of his conviction, rather than establish his *factual* innocence on the basis of new evidence. As the Supreme Court has stated, actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Bousley*, 523 U.S. at 623, 118 S.Ct. 1604.

Especially considering the extremely high burden a petitioner must meet to

---

18. As did the petitioner in *Cristin*, Sweger argues that he may rest on the trial record without presenting any new evidence, relying on *United States v. Garth*, 188 F.3d 99 (3d Cir.1999). However, as this Court observed in *Cristin*, "in *Garth*, however, we were persuaded that the Supreme Court had reinterpreted the statute under which the petitioner was convicted to require more conduct than was allegedly committed." *Cristin*, 281 F.3d at 420–21. Further, Sweger's brief forthrightly acknowledges that, in *Garth*, "the Court looked *only* at the trial evidence, but did so in the light of a new and authoritative construction of the statute under which the defendant had been convicted." Sweger Br. at 30 (emphasis in original). As in *Cristin*, no such circumstances exist here. Sweger may not rely on *Garth*, and we require that he show some new evidence.

show actual innocence, we agree with the District Court that Sweger presents no new evidence such that no reasonable juror could have convicted him of first-degree murder. Because he cannot make out a claim of actual innocence, Sweger's procedural default of Issue E may not be excused. We affirm the District Court's dismissal of Sweger's habeas claims under Issue E.

### IV.

For the foregoing reasons, we reverse the District Court's dismissal of Issues B and C and affirm the District Court's dismissal of Issue E. We remand this case to the District Court to consider Issues B (ineffective assistance of trial counsel in failing to preserve the issue of denial of individual *voir dire*) and C (disposition by the Pennsylvania Superior Court on direct appeal of challenges to jury instructions in a manner contrary to U.S. Supreme Court precedent) on their merits.