

2006 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-3-2006

# Scott v. Lavan

Precedential or Non-Precedential: Non-Precedential

Docket No. 05-1876

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2006

Recommended Citation

"Scott v. Lavan" (2006). *2006 Decisions*. Paper 623.
http://digitalcommons.law.villanova.edu/thirdcircuit_2006/623

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2006 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 05-1876

DANIEL SCOTT,
                                                Appellant

v.

THOMAS LAVAN, SUPERINTENDENT;
DISTRICT ATTORNEY FOR PHILADELPHIA;
THE ATTORNEY GENERAL OF THE STATE OF PENNSYLVANIA

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
D.C. Civil Action No. 03-cv-6778
(Honorable John P. Fullam)

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 18, 2006

Before:  SCIRICA, *Chief Judge*, McKEE and STAPLETON, *Circuit Judges*

(Filed August 3, 2006)

OPINION OF THE COURT

SCIRICA, *Chief Judge*.

        Daniel Scott appeals the denial of his 28 U.S.C. § 2254 petition.  We agree with

the District Court that Scott's petition is time barred and will affirm.

I.

Because we write for the parties, we will set forth only those facts necessary for our analysis. On December 18, 1992, Scott, or "Bowtie" as he was often called, was convicted in the Court of Common Pleas of Philadelphia County of third-degree murder, conspiracy, and possession of an instrument of a crime. The conviction arose out of an incident on June 19, 1991, in which Scott and his co-defendants, Artis Mitchell and Rodney Miller, were accused of drawing guns and firing at Walter ("Pawney") Scott after an argument.[1] At trial, Carlos Taylor testified he saw Scott pull a nine millimeter automatic out of his pocket and fire two shots at Pawney. When Pawney turned to run, Taylor saw Scott and his co-defendant, Mitchell, chase Pawney, firing several rounds of shots at him.[2] Pawney was fatally wounded. In a statement to the police, another witness, Anthony Fletcher, stated he saw Scott pull a gun on Pawney, fire two shots, and then, along with Miller and Mitchell, shoot several times at Pawney while he fled.[3] Charles Conyers testified that Scott, Miller, and Mitchell were on the scene just before the shooting, although Conyers left the scene before guns were drawn. The victim's mother, Margaret Butler, testified she heard gunfire, came out on the street, and saw her son lying

---

[1]We refer to Appellant by his last name, Scott, and the victim, Walter Scott, by his nickname, Pawney.

[2]Taylor testified he did not see Miller take part in the shooting.

[3]At trial, Fletcher, who was thirteen at the time of the incident and fourteen at the time of trial, did not recall telling the police several of the material facts. He explained he was afraid to testify and asserted the information in his statement was derived from what he heard from others.

2

injured on the ground. As she was cradling him, and just before he died, Pawney whispered to his mother, "Bowtie done killed me." (App. 94.) Investigating police found on the scene nine fired cartridges from three different types of guns. Five of the cartridges were from a nine millimeter gun.

Scott and Mitchell were found guilty of all crimes, but Miller was acquitted. After several unsuccessful post-verdict motions and state petitions for post-conviction relief, Scott filed this federal petition for habeas corpus in the Eastern District of Pennsylvania, raising several claims, mostly based on the alleged ineffective assistance of both his trial counsel and his different, post-conviction counsel. The Magistrate Judge filed a report, recommending that the petition be denied as time-barred under the AEDPA statute of limitations, 28 U.S.C. § 2244(d)(1). Scott filed objections, claiming the limitations period should be equitably tolled because Scott was "actually innocent" of the crimes for which he was convicted. The District Court approved and adopted the Magistrate Judge's findings and recommendations, denying Scott's petition as untimely. The court also granted a certificate of appealability on Scott's actual innocence claim.

II.

On appeal, Scott argues AEDPA's statute of limitations, 28 U.S.C. § 2244(d)(1), should be tolled because he is actually innocent. Alternatively, he contends AEDPA's statute of limitations, as applied to a person who is actually innocent, violates the

3

Suspension Clause, U.S. Const. Art. I, § 9 cl. 2.[4]  We have appellate jurisdiction under 28

U.S.C. §§ 1291 and 2253(a).  We exercise plenary review over the District Court's legal

determinations.  *See Sweger v. Chesney*, 294 F.3d 506, 522 (3d Cir. 2002); *Nara v. Frank*,

264 F.3d 310, 314 (3d Cir. 2001).

To demonstrate actual innocence, Scott must prove, "in light of the new evidence,

no juror, acting reasonably, would have voted to find him guilty beyond a reasonable

doubt."  *Sweger*, 294 F.3d at 522 (quotations omitted).  "Actual innocence means factual

innocence, not mere legal insufficiency."  *Id.* at 523 (quotation omitted).  Furthermore,

Scott must "support his allegations of constitutional error with *new reliable evidence —*

whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical

physical evidence — that was not presented at trial."  *Id*. (quotation omitted).

In support of his contention that he is actually innocent, Scott presents the

following:

> (1) The affidavit of Almer Brown, a person who claims to have been incarcerated with Scott's co-defendant Rodney Miller during the time of Scott's trial.  Brown states Miller admitted to Brown that he (Miller) "committed the actual murder, yet his co-defendants was [sic] going to take the rap."  (App. 520.)

> (2) The affidavit of Renee Miller, Rodney Miller's sister, in which she claimed she "did not see Daniel Scott out on the street" on the night of the shooting.  (*Id.* 516.)

---

[4]Article I, section 9, clause 2, provides, "The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."

(3) An undated, unsworn statement from Lovonia Walton, a prison guard and co-worker of Scott's sister, Katty Carter. Walton claims Brown approached her and informed her of Miller's alleged confession.[5]

(4) The testimony of alibi witnesses which Scott asserts his counsel should have presented at trial.[6]

(5) An undated, unsworn statement from Rodney Miller, Scott's acquitted co-defendant who is now deceased, in which he states, "On the night of the incident which [Scott's] been convicted of, from my recollection I didn't see him out there that night." (*Id.* 517.)

The District Court held, "At most, petitioner's evidence suggests that a trial verdict of not guilty would not have been unreasonable. But that is not enough to permit a federal court to set aside the trial verdict." (*Id.* 3.) The reliability of this evidence is dubious. Most of these statements are undated and unsworn, and many of the accounts constitute hearsay. Some of the statements are from Scott's mother, sister, and girlfriend. Furthermore, it appears the alleged statement of Rodney Miller was made after Miller had already been acquitted of the crime for which Scott was convicted. (*See id.* 517 (referring

---

[5]Scott also refers in his brief to a statement from Katty Carter, Scott's sister, who worked as a prison guard with Lovonia Watson and who apparently stated she overheard Brown discussing Miller's alleged confession. This statement is not in the record, although it appears Scott presented it both to the state court as part of his second PCRA petition and to the District Court to support his § 2254 petition.

[6]It is not clear, either from Scott's briefs or from the record, exactly what these alleged alibi witnesses would have testified to at trial. The evidence in the record consists only of very limited examinations of these persons at Scott's post-trial motion hearing. From what is available, it appears Scott's girlfriend, Lynette Long, would testify that she was with Scott all night. And Long's cousin, Debra Hall, and Scott's mother-in-law, Delores Carter, would corroborate parts of Long's story (although they could not testify to Scott's whereabouts at the precise time of the shooting).

to the "incident which [Scott's] been convicted of").)  Miller's sister's statement also post-dates Miller's acquittal.  The reliability of the statements from Brown, Walton, and Carter about Miller's alleged "confession" is also undermined because Miller did not refer to his alleged culpability in his own statement.  Regarding Scott's alleged alibi witnesses, Scott's defense attorney testified at the post-verdict hearing that he did not present these witnesses because he believed they were not credible.[7]

In light of the ample evidence at trial establishing Scott's conduct and culpability in Pawney's murder, a jury would be entitled to discredit Scott's evidence and find him guilty.  Accordingly, we find no basis for actual innocence in this case.[8]

In light of this holding, we do not address whether there is an actual innocence "exception" to AEDPA's statute of limitations.  *Compare David v. Hall*, 318 F.3d 343, 347 (1st Cir. 2003) (holding prisoners "who may be innocent are constrained by the same explicit statutory or rule-based deadlines as those against whom the evidence is overwhelming"), *with Souter v. Jones*, 395 F.3d 577, 599 (6th Cir. 2005) ("[E]quitable tolling of the one-year limitations period based on a credible showing of actual innocence

---

[7]Furthermore, most of this evidence, if reliable, would not demonstrate Scott's "factual innocence."  Many of these witnesses would testify either that they "did not see Scott out on the street" or that they saw Scott elsewhere earlier that night (but not at the time of the shooting).  This does not demonstrate, as a factual matter, that Scott was not at the scene of the crime, participating in Pawney's murder.

[8]Because we determine Scott's evidence does not establish his "factual innocence," we need not determine whether this evidence was sufficiently "new" to support an actual innocence claim.  *See generally United States v. Davies*, 394 F.3d 182, 191 n.8 (3d Cir. 2005) (discussing the "new" evidence requirement).

is appropriate.").  Furthermore, we need not decide whether AEDPA's statute of limitations, as applied to persons who are actually innocent, violates the Suspension Clause.  *See David*, 318 F.3d at 347 (rejecting the contention that applying AEDPA's statute of limitations period to persons who claim "actual innocence" amounts to a suspension of the writ).

III.

For the foregoing reasons, we will affirm the District Court's judgment, dismissing Scott's § 2254 petition.