**UNITED STATES of America**

v.

**Alex WADE, Appellant.**

**No. 10–3847.**

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit LAR 34.1(a) Nov. 10, 2011.

Filed: Nov. 14, 2011.

Tomika N. Stevens, Esq., Office of United States Attorney, Philadelphia, PA, for United States of America.

Paul J. Hetznecker, Esq., Philadelphia, PA, for Appellant.

Before: SCIRICA, SMITH, and JORDAN, Circuit Judges.

## OPINION OF THE COURT

JORDAN, Circuit Judge.

Alex Wade appeals the October 8, 2010 judgment of the United States District Court for the Eastern District of Pennsylvania sentencing him to 96 months' imprisonment and five years' supervised release based on his conviction for possession with intent to distribute five grams or more of cocaine base ("crack") in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). For the following reasons, we will affirm.

## I. Background

### A. *The Offense*

On May 1, 2009, Adam Hendricks asked Alex Wade to meet him in Pottstown, Pennsylvania to sell him crack. Hendricks went to the meeting place in a car owned by his then-girlfriend, Kayla Rainier, who sat in the front passenger seat. When Wade arrived, he entered the backseat of Rainier's vehicle, and, as planned, sold

crack to Hendricks. Wade was wearing a black jacket at the time. The only other person who had been in the backseat that day was Dan McCaffery, the boyfriend of Hendricks's mother. Neither Hendricks nor Rainier had seen McCaffery with a black jacket while he was in the car.

After their illegal transaction, Wade asked Hendricks for a ride to other locations in Pottstown. Hendricks agreed and drove Wade to two separate places, where Wade left the car for short periods of time. Wade and Hendricks then agreed that Hendricks would drive Wade to Philadelphia in exchange for gas money and crack. Once in Philadelphia, Wade exited the car and returned a few hours later. Each time that Wade left the car, both in Pottstown and Philadelphia, he carried the black jacket with him and returned to the car with it.

At approximately 11:30 p.m. that evening, Philadelphia police officers, Bernard Spain and Thomas O'Brien, drove by Rainier's parked car, and, after observing the brake lights tap on, decided to investigate. O'Brien questioned Hendricks and removed him from the vehicle when he could not produce any identification. As O'Brien was questioning Hendricks and Spain was moving to the passenger side to question Rainier, Spain noticed a movement in the backseat. He then saw Wade hunched down in the backseat holding a black leather jacket and pretending to talk on a cell phone, while making movements toward his waist.

Spain asked Wade for identification, which Wade said he did not have. Spain later testified that he asked Wade for his name and date of birth, ran a check on Wade's information over the radio, and, though he learned that Wade had no open warrants, decided to remove him from the car for safety reasons because Wade was still moving around suspiciously. However, according to the arrest report prepared by a Philadelphia police detective, Spain removed Wade from the car right after finding him in the backseat, before checking his information over the radio. Whenever Wade was removed from the car, Spain immediately noticed a firearm in the crease of the backseat where Wade had been sitting. After confiscating the gun, Spain placed Wade in handcuffs, recovered $3,362 from Wade's pockets,[1] and put him into the police car.

Spain then returned to Rainier's car to retrieve the black jacket that Wade had left in the backseat. When Spain searched the black jacket, he found a digital scale, one plastic bag containing new and used plastic bags, and one plastic bag containing a straw cut at an angle. After feeling what he believed to be a bag of marijuana inside the jacket, Spain used a pocket knife to open the jacket seam and recovered a bag containing approximately 27 grams of crack, a bag containing approximately 183 milligrams of crack, and a bag containing approximately 8 grams of marijuana.[2] The officers obtained consent from Rainier to perform a full search of the car, and they discovered drug paraphernalia in the front passenger compartment, which Hen-

1. Though the PSR states that Wade had $3,394 in his possession, which is the amount that Spain first calculated that night, Spain acknowledged that he did not add correctly, and that the correct amount recovered was actually $3,362.

2. Though the PSR states that the black jacket contained "approximately 30.3 grams of [crack], an additional packet of [crack], and a bag of marijuana weighing approximately 9.5 grams," (PSR at ¶ 10) the substances found in the black jacket were "weighed and chemically analyzed and found to be 27.23 grams of [crack], ... 183 milligrams of [crack], and 8.43 grams of marijuana." (App. at 444–45.)

dricks and Rainier indicated belonged to them.[3] No other drugs were found in the car.

On July 14, 2009, a grand jury indicted Wade for possession with intent to distribute five grams or more of crack, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B) ("Count One"), and possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) ("Count Two").

### B. *The Trial*

A jury trial commenced on March 29, 2010. At trial, both Hendricks and Rainier identified the black jacket as the same one that Wade wore and kept with him on May 1, 2009. They also denied that the gun, black jacket, and the drugs and drug paraphernalia found in the black jacket belonged to them or McCaffery. Hendricks further testified that the plastic bag of crack seized from the black jacket was consistent with the small bag of crack he purchased from Wade in Pottstown. McCaffery testified that he did not see the black jacket, the drugs and drug paraphernalia seized from the black jacket, or the gun in the backseat when he was in the car earlier on May 1. The government's drug expert testified that the drugs and drug paraphernalia seized from the black jacket were consistent with distribution, not personal use. Wade called one witness, his girlfriend, who testified that she never saw Wade with the black jacket and that he did not have any drugs on him when she saw him on May 1, 2009.

Spain testified at length regarding his recollection of that evening, stating that

Wade was holding the black jacket when he first saw him in Rainier's car. During cross-examination, defense counsel sought to challenge Spain's credibility by questioning him regarding the discrepancy between the arrest report and his testimony on direct examination regarding when Wade was removed from the vehicle. When defense counsel used that discrepancy to question whether Spain had the legal right to search the vehicle after removing Wade, the government objected, and the District Court held a sidebar conference. The Court instructed Wade's counsel as follows:

> Fourth Amendment issues are not for you to try. I mean, I have given you latitude as you're telling me it goes to credibility. But the jury is not deciding whether this was a lawful stop or not.... I decided that. That's a question of law.... I'm going to permit ... you to challenge his credibility by prior inconsistent statements, by conduct. But ... the Fourth Amendment ... I don't want the jury to be confused with the issue of whether this was a proper search or not because that's not their issue.

(App. at 388.) The Court determined that Wade's counsel could question Spain for impeachment purposes, but ruled that it would instruct the jury that the cross-examination could not be used to determine whether the stop and search were lawful. Wade's counsel acknowledged that he would "impeach [Spain] on [his] statements," (App. at 390) and proceeded to try to do that on a variety of issues.[4]

---

3. The drug paraphernalia was not confiscated, and though both Hendricks and Rainier were subsequently charged, those charges were dismissed.

4. Specifically, subsequent to the sidebar, Wade's counsel cross-examined Spain on the circumstances leading up to Wade's removal from the vehicle and subsequent seizure of the gun, the discrepancy in the tally of the money recovered from Wade compared to the amount listed in the property receipts, the subsequent consent search of the vehicle, and

After closing arguments, and after conferring with counsel, the District Court instructed the jury that, among other issues, it should decide "whether the [g]overnment has proved beyond a reasonable doubt that Mr. Wade . . . possessed [crack] with the intent to distribute. . . ." (App. at 550.) Regarding the element of possession, the Court continued:

If you find that Wade either had actual possession of the controlled substance or had the power and the intention to exercise control over it, even though it was not in . . . Wade's physical possession—that is that Wade had the ability to take actual possession of the substance when Wade wanted to do so—you may find that the [g]overnment has proved possession.

Possession may be momentary or fleeting. Proof of ownership of the controlled substance is not required. Mere proximity to the controlled substance or mere presence on the property where it is located or mere association with the person who does control the controlled substance or the property is not enough to support a finding of possession.

(App. at 551.)

Approximately two and a half hours later, because the jury was unable to reach a verdict, the District Court told the jury to return the following day to continue deliberations. The following morning, the District Court gave the jury a modified *Allen* charge. After deliberating for less than two hours, the jury asked for "clarification on [the] legal definition of possession [in Count One]," and inquired "what happens if [the jury] cannot reach a unanimous decision." (App. at 586.) When the District Court consulted with counsel regarding an appropriate response to the jury's questions, Wade's counsel asked that the

jury also be reminded of the burden of proof, specifically that the government must prove beyond a reasonable doubt that Wade knew that what he possessed was a controlled substance. The District Court denied that request because it did not think it was applicable to the questions the jury had asked. The jury then returned to the courtroom, where the District Court answered the jury's first question—regarding possession—by reading the instruction on the legal definition of possession, and answered the jury's second question—regarding a unanimous verdict—by reading a portion of the pertinent instruction that had been given before the jury began deliberating that morning.

Following those instructions and a brief sidebar, the jury foreperson requested that the judge repeat the instruction on possession. Before repeating that instruction, the District Court gave the following illustration:

To possess a controlled substance means to have it within a person's control. In other words, this pen is right in front of me. I don't have it on me, but I have control over it and the intent to exercise control over the pen on my desk, so to possess a controlled substance means to have it within a person's control.

(App. at 594–95.) The District Court then again instructed the jury on both the definition of possession and knowledge, in language that closely resembled the Court's original instructions. In that supplemental instruction, the Court told the jury that "the phrase knowingly or intentionally . . . require[s] the [g]overnment to prove beyond a reasonable doubt that [the] defendant knew that what . . . he distributed or possessed with intent to distribute was a controlled substance" and "that the [g]overnment must prove beyond a reasonable doubt that the controlled substance was, in

when Spain believed that he had officially    placed Wade under arrest.

fact, ... crack...." (App. at 596.) The District Court then repeated the instruction on the definition of possession.

Immediately thereafter, at sidebar, Wade's counsel objected to the pen illustration, arguing that the analogy assumed that the pen belonged to the judge, where the jury could not just assume that the black jacket belonged to Wade. The District Court responded that it was only an illustration to demonstrate possession, and decided not to instruct the jury differently. Although the jury subsequently sent a note asking the District Court to repeat the definition of possession again, the jury requested a copy of the verdict slip before the Court could call them back in to receive the instructions. The jury found Wade guilty on Count One, the drug charge, and not guilty on Count Two, the weapons charge.

Wade timely appealed.

## II. Discussion[5]

On appeal, Wade argues that (1) the government failed to present sufficient evidence to prove beyond a reasonable doubt that he was in constructive possession of the black jacket; (2) the District Court erred in limiting the scope of his cross-examination of Spain; (3) the District Court erred in not granting his request to re-instruct the jury regarding the burden of proof; and (4) the District Court erred in the illustration it provided to the jury regarding constructive possession. We address each of those arguments in turn.

### A. *Sufficiency of the Evidence for Constructive Possession*

Wade argues that the evidence was insufficient as a matter of law to support the

conviction because the government failed to prove beyond a reasonable doubt that Wade was in constructive possession of the black jacket and the crack it contained. "We apply a particularly deferential standard of review when deciding whether a jury verdict rests on legally sufficient evidence." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir.1998). We must view the evidence in the light most favorable to the government and sustain the verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (citation omitted). Thus, we have said that "[a] claim of insufficiency of the evidence places a very heavy burden on an appellant." *United States v. Gonzalez*, 918 F.2d 1129, 1132 (3d Cir.1990) (citation omitted).

Under 21 U.S.C. § 841(a)(1), "it shall be unlawful for any person knowingly or intentionally to ... possess with intent to ... distribute ... a controlled substance." 21 U.S.C. § 841(a)(1). Possession may be actual or constructive. *United States v. Crippen*, 459 F.2d 1387, 1388 (3d Cir.1972). " 'A person who, although not in actual possession, knowingly has both the *power and the intention* at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.' " *United States v. Garth*, 188 F.3d 99, 112 (3d Cir.1999) (quoting *United States v. Blackston*, 940 F.2d 877, 883 (3d Cir.1991)). "Dominion and control are not established ... by 'mere proximity to the [contraband], or mere presence ... where it is located or mere association with the person who does control the [contraband].' " *Garth*, 188 F.3d at 112 (quoting *United States v. Jenkins*, 90 F.3d 814, 818 (3d Cir.1996)).

---

5. The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Here, viewed in the light most favorable to the government, we conclude that the evidence presented was sufficient for a rational trier of fact to have found, beyond a reasonable doubt, that Wade was in constructive possession of the black jacket which contained crack. First, McCaffery testified that he, as the only other person in the backseat of Rainier's car on May 1, 2009, did not see the black jacket in the car. Second, Hendricks and Rainier both testified that neither of them owned the black jacket, that the first time either of them saw the black jacket was when Wade entered Rainier's vehicle, and that whenever Wade left the vehicle during stops made in Pottstown and Philadelphia, he carried the jacket with him. Third, Hendricks testified that the baggie of crack that Wade supplied to him matched the baggie of crack found inside the lining of the black jacket. Fourth, Spain testified that when he first saw Wade in the backseat, Wade was holding the black jacket. In view of this evidence, Wade has failed to meet his heavy burden of showing that no rational trier of fact could have found, beyond a reasonable doubt, that he was in at least constructive possession of the black jacket.

### B. Scope of Cross–Examination of Spain

Wade argues next that he was deprived of his right to confront a witness in violation of the Sixth Amendment's Confrontation Clause when the District Court barred his counsel from challenging Spain's credibility regarding the circumstances surrounding the search of the car and seizure of the black jacket. In the context of a Confrontation Clause claim, we review a district court's ruling regarding the scope of cross-examination for abuse of discretion. *United States v. Williams*, 464 F.3d 443, 448 (3d Cir.2006) (citing *United States v. Lore*, 430 F.3d 190, 208 (3d Cir.2005)).

"[A] district court 'retains wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits' on cross-examination to avoid, among other things, harassment, prejudice, confusion of issues, or interrogation that is only marginally relevant or is repetitive." *Lore*, 430 F.3d at 208(quoting *United States v. Mussare*, 405 F.3d 161, 169 (3d Cir.2005)).

To determine whether a district court's limitation on cross-examination violates the Confrontation Clause, we have established a two-part test:

> First, we must determine whether that ruling significantly inhibited [a defendant's] effective exercise of her right to inquire into [the] witness's 'motivation in testifying'; and second, if the District Court's ruling did significantly inhibit [the defendant's] exercise of that right, whether the constraints it imposed on the scope of [the] cross-examination fell within those reasonable limits' which a trial court, in due exercise of its discretion, has authority to establish.

*United States v. Silveus*, 542 F.3d 993, 1006 (3d Cir.2008) (citation omitted).

Here, the District Court's ruling did not significantly inhibit Wade's ability to challenge Spain's credibility. After Wade's counsel asked Spain about his legal right to search the vehicle, the District Court properly sustained the government's objection to that question because the legality of the search had already been decided, and the Court rightly did not "want the jury to be confused with the issue of whether this was a proper search or not." (App. at 388.) With the Court's permission, defense counsel continued to question Spain "to challenge his credibility by prior inconsistent statements." (App. at 388.) Indeed, defense counsel subsequently sought to challenge Spain's credibility in detail and at length. Accordingly, the record reveals that the District Court's

limitation on defense counsel's cross-examination of Spain did not violate the Confrontation Clause.[6]

### C. Jury Instructions

#### 1. Denial of Further Instruction on Burden of Proof

Wade claims that the District Court erred by failing to provide the jury with a further instruction regarding the burden of proof required to find constructive possession. We review for abuse of discretion a district court's refusal to give a particular instruction. *United States v. Leahy*, 445 F.3d 634, 642 (3d Cir.2006). "[W]hen we consider jury instructions we consider the totality of the instructions and not a particular sentence or paragraph in isolation." *Id.* (citation and internal quotation marks omitted).

■ The District Court did not abuse its discretion when, after a request by Wade's counsel, it refused to provide a supplemental instruction to the jury on the required burden of proof. After closing arguments, when the Court instructed the jury regarding the government's burden to prove Wade's guilt beyond a reasonable doubt, Wade raised no objection. When the jury requested clarification on the legal definition of possession under Count One, the Court provided an instruction consistent with that request. Though Wade argues that the jury should have also been instructed as to the burden of proof at the same time it was being instructed on the legal definition of possession, an instruction on the burden of proof was outside the scope of the jury's question, and the District Court could rightly decline to give more information than had been requested.

Moreover, after the jury asked the Court to repeat the instruction that had just been given about possession, the Court re-instructed the jury on the very burden of proof that Wade claims was erroneously omitted. In that supplemental instruction, the District Court specifically instructed the jury that the government must prove beyond a reasonable doubt that Wade knew that what he possessed was a controlled substance, and that the controlled substance was crack. Accordingly, the District Court did not abuse its discretion when it initially refused to instruct on the burden of proof, especially considering that the Court subsequently re-instructed the jury on that specific issue.

#### 2. Illustration of Constructive Possession

■ Wade also claims that the District Court provided an erroneous illustration of constructive possession. Specifically, he contends that the District Court's illustration of the pen, in light of the fact that the judge had exclusive control of the pen before he set it down, "instruct[ed] the jury to find that, in fact [Wade] had at some point possession of the jacket, and therefore [was] in constructive possession of the contraband hidden inside." (Appellant's Br. at 29.) Though we "review a court's choice of wording [in jury instructions] for abuse of discretion," *United States v. Williams*, 344 F.3d 365, 377 (3d Cir.2003), we exercise plenary review when the question is whether a district court's instructions misstated the law, *United States v. Dobson*, 419 F.3d 231, 236 (3d Cir.2005). "It is well settled that a single

---

**6.** Even assuming *arguendo* that the District Court's ruling significantly inhibited Wade's right to challenge Spain's credibility, under the second prong of our two-part test, the constraints that the District Court imposed on the scope of cross-examination fell within the reasonable limits that the Court, in its discretion, had authority to establish. *See Silveus*, 542 F.3d at 1006.

jury instruction may not be evaluated in artificial isolation; rather, it must be evaluated in the context of the overall charge." *Williams,* 344 F.3d at 377 (citation omitted).

The District Court's initial jury instruction was a proper statement of the law regarding constructive possession. *See Garth,* 188 F.3d at 112. After conferring with counsel, it was also proper for the District Court to provide the jury with supplemental instructions tailored to the jury's questions. *See Gibson v. Mayor & Council of Wilmington,* 355 F.3d 215, 231 (3d Cir.2004) (approving judicial tailoring of supplemental instructions to specifically respond to a jury request was not an abuse of discretion). In response to the jury question asking that the District Court again provide instruction on possession, the Court used a pen to illustrate the concept of constructive possession. Although the pen illustration standing alone may not have been ideal, it was not, in context, a misstatement of the law nor an abuse of discretion. It was intertwined with a concededly proper instruction: in addition to providing a supplemental jury instruction on the legal definition of possession just minutes before the pen illustration, the District Court repeated, twice, the instruction regarding the legal definition of possession immediately after the illustration. Evaluating the illustration in the context of the overall jury charge, the District Court did not abuse its discretion when it provided the illustration to help explain to the jury the legal definition of possession.

## III. Conclusion

For the foregoing reasons, we will affirm.